# EXHIBIT C



March 19, 2019

**Via Overnight Courier and Email (jwalsh@alpine-securities.com)**

Joseph Walsh
Chief Executive Officer
Alpine Securities Corp.
39 Exchange Place
Salt Lake City, UT 84111

RE: **Alpine Securities Corporation – Notice of Suspension Pursuant to FINRA Rule 9552 ("Notice")**

Dear Mr. Walsh:

NASD Rule 1017(a)(4) requires a member to file an application for approval of a "change in the equity ownership or partnership capital of the member that results in one person or entity directly or indirectly owning or controlling 25 percent or more of the equity or partnership capital."[1] Further, FINRA Rule 9552(a) provides, in part, that FINRA may issue written notice of a resulting suspension to any member who fails to provide any material required to be filed pursuant to FINRA Rules, or who fails to keep its membership application or supporting documents current.

FINRA has determined that Alpine Securities Corporation ("Alpine" or "the Firm") has failed to comply with NASD Rule 1017(a)(4) because it has not filed required materials for a Continuing Membership Application ("CMA"), despite undergoing at least two known changes in its ownership structure. Specifically, NASD Rule 1017(a)(4) mandates that under the circumstances detailed below the Firm was, and still is, required to file the materials for a CMA that sought approval before making any material changes to its ownership structure.

On August 31, 2017, Alpine filed an amendment to its Uniform Application for Broker-Dealer Registration ("Form BD") reflecting a change in its ownership structure. More specifically, the Form BD amendment reflected that: effective August 2017, the "Man Cub Trust" and the "Pee Pee Pop Trust" each owned "50%, but less than 75%," of SCA Clearing LLC ("SCA"), the entity which directly owns 100% of the equity interest in Alpine.[2] On November 27, 2017, the Firm filed another Form

---

[1] *See also NASD Notice to Members 00-73* (November 15, 2000), stating that a group of individuals acting in concert to obtain control of 25 percent or more of the equity or partnership capital of a member will be deemed an "entity" for purposes of NASD Rule 1017(a)(4), and as such, will trigger the requirement to submit an application to obtain approval of the ownership change.

[2] *See* relevant excerpt of the Form BD Amendment filed by Alpine on August 31, 2017, showing the changes to the indirect owners of the Firm, attached as Exhibit 1. *See also* email from Chris Frankel on behalf of Scottsdale and Alpine Securities Corp. to FINRA, dated September 20, 2017, with attached

Joseph Walsh, CEO
Alpine Securities Corporation
March 19, 2019

BD amendment to reflect another change in the indirect ownership of Alpine and separately informed FINRA staff orally and in writing of the changes.[3] This time, the Firm deleted the names of the two trusts noted above as indirect owners – the "Man Cub Trust" and the "Pee Pee Pop Trust" – from its Form BD and told FINRA staff that six trusts had now each obtained equal ownership interests of approximately 16.7 percent in SCA.[4] The Firm further represented that the trustees of each trust are John and Justine Hurry and the beneficiaries of the trust are John and Justine Hurry along with their four children.[5]

Further, on December 8, 2017, the Firm sought consultation from FINRA's Membership Application Program ("MAP") as to whether or not the two ownership changes noted above required that the Firm submit a CMA.[6] In its letter to MAP, Alpine confirmed that, in August 2017, the Man Cub Trust and Pee Pee Pop Trust obtained indirect ownership of Alpine in equal parts via their ownership of SCA. Then, in November 2017, six separate trusts took over 100% of the ownership of SCA in equal parts of approximately 16.7%.[7] Based on Alpine's representations, FINRA concluded that both ownership changes triggered the provisions of NASD Rule 1017(a)(4) and directed the Firm to file a CMA ("the December 12, 2017 notification letter").[8] MAP specifically notified Alpine that it will need to review the

---

organizational charts demonstrating the change in the ownership structure, attached as Exhibit 2. Neither of these two trusts was ever reviewed or approved by FINRA to hold a 25 percent or more equity interest in the Firm.

[3] *See* relevant excerpt of the Form BD amendment filed by Alpine on November 27, 2017, attached as Exhibit 3. *See also* emails between Frankel and Eric Levine of FINRA, dated November 17-22, 2017, in which Frankel explains the November 2017 ownership change, attached as Exhibit 4.

[4] *See* Exhibit 3. In his November 21, 2017 email, Frankel states that "… none of the trusts (and hence none of the Trustees) need to be disclosed on the Form BD because no [t]rust owns 25% or more of the holding companies." Exhibit 4.

[5] *See* Exhibit 4.

[6] *See* letter from Alpine to FINRA's Membership Application Program ("MAP") dated November 24, 2017, attached as Exhibit 5.

[7] *Id.* Notably, the Firm did not provide FINRA staff copies of any of the trust agreements that have held an ownership interest in the Firm from August 2017 to present.

[8] *See* Email from Liza Manzo, Senior FINRA MAP Examiner, to the Firm, dated December 12, 2017, notifying the Firm of the need to file a CMA, attached as Exhibit 6. In concluding that a CMA is required with regard to the second ownership change in which six trusts obtained indirect ownership of Alpine in equal part of approximately 16.7 percent, MAP noted its reliance on the guidance published in *NASD Notice to Members 00-73, supra* note 1.

2

Joseph Walsh, CEO
Alpine Securities Corporation
March 19, 2019

trust documents for all trusts referenced in Alpine's letter so that MAP could ascertain the ownership structure of the Firm.[9]

In addition to the December 12, 2017 notification letter, FINRA has reminded the Firm on at least two other occasions via telephone and email that it was required to file the CMAs.[10] Despite these notices, the Firm has failed to file any CMA to seek the necessary FINRA approval for any of the trusts noted above to own the Firm.[11]

Accordingly, pursuant to FINRA Rule 9552(c), FINRA is hereby notifying you that the Firm's membership with FINRA will be suspended **effective on April 10, 2019** (the "Effective Date")[12] if, by that date, the Firm does not submit the required CMAs.

Request for Hearing

Pursuant to FINRA Rules 9552 and 9559, the Firm may request a hearing. The hearing request must be in writing and filed with the FINRA Office of Hearing Officers within 21 days of this Notice. The hearing request must set forth with specificity any and all defenses as to this notice. Please refer to FINRA Rules 9552 and 9559 for further information regarding relevant procedures. Pursuant to FINRA Rule 9559(c)(1), a timely written request for a hearing with the required specificity as to any and all defenses will stay the effectiveness of this notice unless the Chief Hearing Officer or the Hearing Officer assigned to the matter orders otherwise for good cause shown. Hearing requests must be directed to:

> FINRA/Office of Hearing Officers
> 1735 K Street, N.W.
> Washington, D.C. 20006

If the Firm requests a hearing, you should be aware that, pursuant to FINRA Rules 8310(a) and 9559(n), a Hearing Officer or, if applicable, Hearing Panel may approve, modify or withdraw any and all sanctions, requirements, restrictions or limitations imposed by this notice, and may also impose any other fitting sanction.

---

[9] *See* Exhibit 6.

[10] *See* email from Robert Ishak of FINRA to Frankel, dated January 29, 2018, attached as Exhibit 7.

[11] FINRA staff has made several efforts to obtain the trust documents for the various trusts that have held an ownership in Alpine from August 2017 through the present to ascertain who owns the Firm, but Alpine has failed to produce any of these documents.

[12] *See* FINRA Rule 9552(d).

3

Joseph Walsh, CEO
Alpine Securities Corporation
March 19, 2019

Request for Termination of the Suspension Pursuant to FINRA Rule 9552(f)

Once a firm has been suspended for failure to file the required CMA pursuant to NASD Rule 1017(a)(4), the Firm may still cure the deficiency by filing such application within three months of the issuance of this Notice. If the Firm submits the required CMA after it has been suspended, but within that three month time period, pursuant to FINRA Rule 9552, the Firm also must submit a written request for the termination of the suspension on the grounds of full compliance with the Notice. A request for termination must be sent under a separate cover to FINRA at the address noted below:

>    FINRA
>    200 Liberty Street, Brookfield Place
>    New York, NY 10281
>    Attn: Bill Wollman

Expulsion from FINRA Membership/Default Pursuant to FINRA Rule 9552(h)

Please be aware that if the Firm is suspended pursuant to FINRA Rule 9552 and fails to request termination of the suspension on the grounds of full compliance with this Notice, within three months of the date the Notice is issued, the Firm will be automatically expelled from FINRA membership. Please refer to FINRA Rule 9552(h).

If you have any questions about this notice, please contact me at (646) 315-8565.


Very Truly Yours,

*[signature]*

Anand Ramtahal
Senior Vice President, FINRA

cc:   Jason Kane, Chief Compliance Officer, Alpine Securities Corp.
      David Brant, Chief Financial Officer, Alpine Securities Corp.
      Alissa Robinson, Senior Director, Membership Application Program
      Rosemarie Fanelli, Senior Director, FINRA Member Supervision
      Ann-Marie Mason, Vice President & Counsel, FINRA Member Supervision
      Meredith MacVicar, Principal Counsel, FINRA Member Supervision
      Eric Levine, Surveillance Director, FINRA Member Supervision
      Robert Ishak, Principal Regulatory Coordinator, FINRA Member Supervision

4