**LEACH KERN GRUCHOW ANDERSON SONG**
SEAN L. ANDERSON
Nevada Bar No. 7259
sanderson@lkglawfirm.com
RYAN D. HASTINGS
Nevada Bar No. 12394
E-mail: rhastings@lkglawfirm.com
2525 Box Canyon Drive
Las Vegas, Nevada 89128
Telephone:    (702) 538-9074
Facsimile:    (702) 538-9113

**SQUIRE PATTON BOGGS (US) LLP**
Gregory A. Davis *(pro hac vice)*
gregory.davis@squirepb.com
Gregory Schneider *(pro hac vice)*
gregory.schneider@squirepb.com
1 East Washington Street, Suite 2700
Phoenix, Arizona 85004
Telephone: (602) 528-4000
Facsimile: (602) 253-8129
*Attorneys for Financial Industry Regulatory Authority, Inc.*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| IN THE MATTER OF THE<br><br>PEE PEE POP TRUST, PEE PEE POP TRUST II, PEE PEE POP TRUST III, MAN CUB TRUST, MAN CUB TRUST II, MAN CUB TRUST III, DATED JULY 22, 2013. | Case No.: 3:19-cv-00240-MMD-CBC<br><br>**OPPOSITION TO MOTION TO REMAND** |

Absent few exceptions that are not applicable here, to sell securities in the United States a broker-dealer must join a registered association of broker-dealers, known as a national securities association. 15 U.S.C. § 78o(a)(1), (b)(1). There is only one national securities association—the Financial Industry Regulatory Authority, Inc. ("FINRA")—which is tasked with supervising its broker-dealer members subject to oversight by the Securities and Exchange Commission ("SEC"). See *Sparta Surgical Corp. v. NASD*, 159 F.3d 1209, 1213–14 (9th Cir. 1998). To perform this supervisory role, the Securities Exchange Act of 1934 (the "Exchange Act")

requires FINRA to promulgate rules—approved by the SEC—which FINRA's members must follow. 15 U.S.C. § 78o-3(b)(6).

Two FINRA members—Scottsdale Capital Advisors Corporation ("Scottsdale") and Alpine Securities Corporation ("Alpine") (collectively, the "Broker-Dealers")—violated FINRA Rule 1017 by refusing to produce certain trust documents with their mandatory continuing membership applications ("CMAs"). [*See* Petition to Assume Jurisdiction (Doc. 1-1) ("Complaint") ¶¶ 6, 9.] As a result, FINRA initiated enforcement proceedings against the Broker-Dealers. [*See* Scottsdale Notice of Suspension (Doc. 1-2); *see also* Alpine Notice of Suspension (Doc. 1-3).] Soon thereafter, FINRA was served with the Complaint, which sought (1) a judicial declaration that the Broker-Dealers do not have to provide to FINRA the trust documents requested pursuant to FINRA Rule 1017, and (2) an injunction to prevent FINRA from terminating or suspending the FINRA membership of the Broker-Dealers despite their non-compliance with FINRA Rule 1017. [Complaint (Doc. 1-1) at 6–7.] The Complaint was filed in Nevada probate court by John Hurry, a FINRA member, as trustee for the trusts that indirectly own the Broker-Dealers—Pee Pee Pop Trust; Pee Pee Pop Trust II; Pee Pee Pop Trust III; Man Cub Trust; Man Cub Trust II; and Man Cub Trust III, Dated July 22, 2013 (collectively, the "Trusts").

On May 9, 2019, FINRA removed the lawsuit to this Court. [Notice of Removal (Doc. 1).] FINRA demonstrated that, among other sources of jurisdiction, this Court has federal question jurisdiction over this action because 15 U.S.C. § 78aa grants federal district courts "exclusive jurisdiction" over claims arising under the Exchange Act "or the rules and regulations thereunder." [*Id.* ¶¶ 1–9.] Because the Trusts' claims necessarily depend on the interpretation of FINRA Rule 1017, which "unavoidably involves answering federal questions," they fall under exclusive federal jurisdiction. *Turbeville v. FINRA*, 874 F.3d 1268, 1275 (11th Cir. 2017).

The Trusts have now moved to remand to state court. [Motion to Remand (Doc. 17).] The allegations of the Complaint, the Trusts argue, "do not involve or implicate federal questions," "do not really involve civil claims or civil actions at all," and "do not involve claims against or that are adverse to FINRA." [*Id.* at 5.] But the exact opposite is true. The very first

-2-

LEACH KERN GRUCHOW ANDERSON SONG
2525 Box Canyon Drive, Las Vegas, Nevada 89128
Telephone: (702) 538-9074 – Facsimile (702) 538-9113

sentence of the Complaint states that it is an action by the Trusts "for declaratory and injunctive relief against [FINRA]." [Complaint (Doc. 1-1) at 1.] The Trusts seek an order that certain certificates "are sufficient proof of the existence and terms of the Trusts to satisfy the requirements for continued membership in FINRA" and "to enjoin FINRA from terminating those memberships." [*Id.*] And the Trusts expressly allege that "FINRA's actions are not required, demanded or even permitted under its own operating rules and procedures." [*Id.* ¶ 10.] Indeed, the only relief sought in the Complaint are orders dictating what documents FINRA must accept under FINRA Rule 1017 and what disciplinary actions FINRA may take in response to the Broker-Dealers' violations of FINRA Rule 1017. The Complaint facially attacks FINRA's application of FINRA Rule 1017, which is an exclusively federal question. *Turbeville*, 874 F.3d at 1275. This Court should deny the Motion to Remand.

## Background

### I.     **FINRA Has An Essential Role In Regulating The Securities Industry.**

Through the Exchange Act, Congress established a comprehensive statutory plan for "cooperative regulation" of the securities market, "under which self-regulatory organizations [('SROs')] would exercise a primary supervisory role subject to ultimate SEC control." *Sparta*, 159 F.3d at 1213–14. Any person desiring to sell securities must join an association of broker-dealers registered as a national securities association. 15 U.S.C. § 78o(a)(1), (b)(1). FINRA, previously known as the National Association of Securities Dealers ("NASD"), is an SRO, and since 1939 has been the only registered national securities association in the United States. *See Turbeville*, 874 F.3d at 1270 n.2.

The Exchange Act requires FINRA to establish rules "designed to prevent fraudulent and manipulative acts and practices, to promote just and equitable principles of trade . . . and, in general, to protect investors and the public interest." 15 U.S.C. § 78o-3(b)(6). Those rules must be approved by the Securities and Exchange Commission ("SEC"), after a public notice and comment, as being "consistent with the requirements of [the Exchange Act]." 15 U.S.C. § 78s(b)(1), (2). FINRA is also required by the Exchange Act to "enforce compliance by its

members and persons associated with its members" and to "appropriately discipline[]" such persons for violation of FINRA's rules or the Exchange Act.  15 U.S.C. § 78o-3(b)(2), (7).

## II.     **FINRA Initiates Enforcement Proceedings Against The Broker-Dealers.**

FINRA Rule 1017 requires members to file CMAs for approval of various "changes to . . . ownership, control, or business operation."  FINRA Rule 1017(a).  Under FINRA Rule 1017, CMAs are required for any "change in the equity ownership or partnership capital of the member that results in one person or entity directly or indirectly owning or controlling 25 percent or more of the equity or partnership capital."  *Id.* 1017(a)(4).  FINRA Rule 1017 also authorizes FINRA to request from a member filing a CMA "any additional information or documents necessary to render a decision on the application."  *Id.* 1017(e).  A member that refuses to keep its membership application current or refuses to provide requested documents may have its membership suspended.  *See id.* 9552(a).

After the Trusts were formed in 2017, they indirectly acquired the Broker-Dealers. [Complaint (Doc. 1-1) ¶¶ 2, 4.]  Initially, the Broker-Dealers did not file the required CMAs or obtain the necessary approval under FINRA Rule 1017, so FINRA served them with Notices of Suspension on March 19, 2019.  [*See id.* ¶ 9; *see also* Scottsdale Notice of Suspension (Doc. 1-2); Alpine Notice of Suspension (Doc. 1-3).]  The Broker-Dealers then belatedly filed their CMAs, but did not provide FINRA with formation documents for the Trusts as requested and required.  [Complaint (Doc. 1-1) ¶¶ 7–9.]  FINRA rejected the CMAs for being substantially incomplete, and the Broker-Dealers requested a hearing to dispute the Notices of Suspension. [*See* Scottsdale Request for Hearing (Doc. 11-2); Alpine Request for Hearing (Doc. 11-3).]  That hearing was held on June 18, 2019.  [*See* Order Rescheduling Hearing Date (Doc. 1-4).]

## III.    **The Trusts Seek Declaratory And Injunctive Relief Against FINRA.**

On April 26, 2019—less than three weeks after the Broker-Dealers requested a hearing— plaintiffs filed the Complaint in Nevada probate court seeking "declaratory and injunctive relief against [FINRA]."  [Complaint (Doc. 1-1) at 1.]  The Complaint alleges that FINRA improperly refused to accept the Broker-Dealers' CMAs and that "FINRA's actions are not required, demanded or even permitted under its own operating rules and procedures."  [Complaint (Doc. 1-

1) ¶¶ 9–10.] It further alleges that a "real and present controversy has arisen between FINRA and Petitioners" over whether "FINRA has the right . . . to obtain the trust instruments" and whether FINRA "has the right to suspend the membership." [*Id.* ¶ 17.] In the prayer, the Trusts seek four types of relief:

> 1. "an order declaring that Petitioners are not obligated to provide FINRA with all information concerning the Trusts or copies of the trust instruments as a condition of membership in FINRA . . . ;"
> 2. declaratory judgment that "Petitioners are not obligated to provide FINRA with all information concerning the Trusts, or copies of the trust instruments as a condition of maintaining their membership in FINRA;"
> 3. an order "enjoining and restraining FINRA from terminating or suspending Petitioners membership in FINRA;" and
> 4. "such further relief as the court deems just."

[Complaint (Doc. 1-1) at 6–7.]

On May 9, 2019, FINRA timely removed this action to this Court pursuant to federal question, diversity, and supplemental jurisdiction. [Notice of Removal (Doc. 1).] On May 24, 2019, FINRA filed a motion to dismiss all claims against it. [Motion to Dismiss (Doc. 11).] The Trusts opposed the motion to dismiss on June 7, 2019 and then moved to remand this action on June 10, 2019. [Opposition to Motion to Dismiss (Doc. 16); Motion to Remand (Doc. 17).]

## Argument

**I.      This Court Has Original Jurisdiction Over This Lawsuit.**

**A.      This Court Has Federal Question Jurisdiction.**

FINRA demonstrated in the Notice of Removal [¶¶ 1–9] that this Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 78aa. Specifically, FINRA demonstrated [¶ 9] that 15 U.S.C. § 78aa grants federal district courts "exclusive jurisdiction" over alleged violations of the Exchange Act "or the rules and regulations thereunder." Because the Trusts assert state law claims against FINRA that necessarily depend

on the interpretation of FINRA Rule 1017, federal courts have exclusive jurisdiction over this action.  [*See id.* ¶¶ 1–9.]

FINRA's removal was proper.  The Supreme Court has held that federal district courts have exclusive jurisdiction under 15 U.S.C. § 78aa for any claims "arising under" the Exchange Act and its rules and regulations.  *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 136 S. Ct. 1562, 1570 (2016).  This standard is satisfied not only when federal law creates the cause of action but also when state-law claims necessarily raise an issue of federal law.  *Id.* at 1569 ("arising under" jurisdiction exists "even when 'a claim finds its origins in state law' . . . if it 'necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance' of federal and state power" (quoting *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 314–15 (2005))).  Therefore—as the Supreme Court explained—federal question jurisdiction "typically" exists where "a state-law cause of action is 'brought to enforce' a duty created by the Exchange Act because the claim's very success depends on giving effect to a federal requirement."  *Id.* at 1570.

The Ninth Circuit has held that exclusive federal jurisdiction exists over state-law claims that depend on whether FINRA or its members violated FINRA rules.  *See Sparta*, 159 F.3d at 1212.  In *Sparta*, plaintiff sued FINRA's predecessor, NASD, in state court for state-law claims concerning the temporary suspension and delisting of plaintiff's stock on the Nasdaq stock exchange.  *Id.* at 1210–11.  NASD removed the action to federal court, the district court denied plaintiff's motion to remand and dismissed the action, and the Ninth Circuit affirmed.  *Id.* at 1211.  The Ninth Circuit held that the viability of any state-law claim against NASD for suspending and delisting the stock necessarily depended on whether NASD violated its own rules:  "If NASD's actions conformed to the rules, there can be no viable cause of action; if its actions violated the rules, any claim falls under the imperative of 15 U.S.C. § 78aa."  *Id.* at 1212; *see also Sacks v. Dietrich*, 663 F.3d 1065, 1068–69 (9th Cir. 2011) ("[I]f the arbitrators were allowed to disqualify Sacks under FINRA's rules, there would be no viable cause of action.  If

. . . the arbitrators exceeded their jurisdiction in violation of FINRA rules, then Sacks's claims fall under the imperative of 15 U.S.C. § 78aa.").

The Eleventh Circuit in *Turbeville* similarly held that exclusive federal jurisdiction exists over state-law challenges to FINRA's "disciplinary and disclosure actions." 874 F.3d at 1275–76. The court explained that in order to resolve such state-law claims, the court "would have to interpret FINRA's internal rules to determine whether FINRA's conduct . . . complied with those rules." *Id.* at 1275. "And because those rules and regulations are promulgated according to the Exchange Act's mandates, their interpretation unavoidably involves answering federal questions." *Id.*

Here, the Trusts' claims against FINRA necessarily depend on the proper interpretation of FINRA Rule 1017, and thus fall under exclusive federal jurisdiction. The Trusts "seek an order that statutory '*Certifications of Trust in Lieu of Trust Instruments*' . . . satisfy the requirements for continued membership in FINRA." [Complaint (Doc. 1-1) at 1.] The Trusts also seek "to enjoin FINRA from terminating those memberships for failure to provide actual trust instruments." [*Id.*] Whether these claims are viable depends entirely on FINRA Rule 1017, which:

- requires FINRA members to file CMAs due to certain ownership changes;
- authorizes FINRA to request "any additional information or documents necessary to render a decision;" and
- allows FINRA to terminate any membership if the member refuses to provide information and documents requested.

*See* FINRA Rule 1017; *see also* FINRA Rule 9552. If FINRA is authorized under FINRA Rule 1017 to request the trust documents—and suspend the FINRA memberships of the Broker-Dealers if those documents are not provided—then the Trusts cannot obtain the declaratory and injunctive relief they seek. *See Sparta*, 159 F.3d at 1212. If, however, FINRA violated FINRA Rule 1017 by demanding these trust documents, then any such claim falls under exclusive federal jurisdiction as the "very success" of the claim "depends on giving effect to a federal requirement." *Merrill Lynch*, 136 S. Ct. at 1570.

Exclusive federal jurisdiction is not affected by the fact that the Trusts purport to seek their relief against FINRA pursuant to the Nevada probate code and Nev. Rev. Stat. § 164.400. [*See* Complaint (Doc. 1-1) at 1; Motion to Remand (Doc. 17) at 3.] Even if Nevada law permits trusts in other circumstances to produce certifications instead of the actual trust instruments, that does not require FINRA to accept these certifications instead of the actual trust instruments when exercising its supervisory authority under FINRA Rule 1017. See *Credit Suisse First Boston Corp. v. Grunwald*, 400 F.3d 1119, 1128 (9th Cir. 2005) ("SRO rules approved by the [SEC] preempt conflicting state law."). The Ninth Circuit has thus already rejected the Trusts' suggestion that FINRA's supervisory functions may be defined and changed through a patchwork of conflicting state laws. See *id.*; *Sparta*, 159 F.3d at 1215 (plaintiff cannot assert state-law claims that "would allow states to define by common law the regulatory duties of a self-regulatory organization").

This issue of the proper interpretation of FINRA Rule 1017 also satisfies the other elements of "arising under" jurisdiction. See *Merrill Lynch*, 136 S. Ct. at 1569. The issue is "actually disputed and substantial," *id.*, as the Trusts expressly challenge FINRA's interpretation of its rules. [Complaint (Doc. 1-1) ¶ 10 ("FINRA's actions are not required, demanded or even permitted under its own operating rules and procedures.");] *see also Turbeville*, 874 F.3d at 1274 (federal question jurisdiction exists where "the complaint is on its face a challenge to FINRA's application of its internal rules"). Nor does federal jurisdiction over these claims disturb the "congressionally approved balance of federal and state power," *Merrill Lynch*, 136 S. Ct. at 1569, because Congress granted federal courts exclusive jurisdiction over claims involving the Exchange Act's rules and regulations. 15 U.S.C. § 78aa.

Indeed, the Trusts' Complaint "does not just raise a federal question; it turns on the existence of a federally supplied right of action." *Turbeville*, 874 F.3d at 1275. The Trusts are attempting to use state-law claims to launch a collateral attack on FINRA's conduct in carrying out its supervision and disciplinary functions under SEC-approved rules. *See id.* "Were such a right of action to exist, it must have been supplied by federal law, because federal law—namely, the Exchange Act—creates SROs, vests them with a first-line role in the enforcement of federal

-8-

securities law, and mandates creation of internal rules to govern their disciplinary and disclosure actions." *Id.* at 1275–76.

### B. This Court Has Diversity Jurisdiction.

FINRA demonstrated in the Notice of Removal [¶ 11] that this Court has diversity jurisdiction over this action pursuant to 28 US.C. § 1332. FINRA demonstrated that the amount in controversy exceeds $75,000 because the Trusts allege the failure to enjoin FINRA will result in a "total loss of their business[es]," which are valued at significantly more than $75,000. [Complaint (Doc. 1-1) at 18.] For example, Alpine alone listed over $7 million in assets as of September 30, 2018. [*See* Alpine Securities Corporation's Statement of Financial Condition (Audited) (Sept. 30, 2018), https://www.alpine-securities.com/financial-statements/.] FINRA also demonstrated there was complete diversity between the adverse parties because the Trusts are all Nevada entities while FINRA is a Delaware corporation with its principal place of business in Washington, D.C. [Notice of Removal (Doc. 1) ¶ 11; *see also* Declaration of Marcia Asquith (Doc. 11-1) ¶¶ 3–4.]

The Trusts do not dispute that the amount in controversy exceeds $75,000. They argue, however, that complete diversity is lacking. Such argument is easily rejected.

First, the Trusts argue in the Motion to Remand [at 7]—without citing any case law—that complete diversity is lacking because "FINRA is not a named defendant in 'the action' at all." State court actions are removable, however, so long as they are "adversarial in nature and similar in many respects to an ordinary civil lawsuit." *In re Kendricks*, 572 F. Supp. 2d 1194 (C.D. Cal. 2008) (citing *Comm'rs of Rd. Improvement Dist. No. 2 v. St. Louis Sw. Ry. Co.*, 257 U.S. 547, 557–58 (1922)). This is true even if the underlying state petition included no named defendants. *See id.* ("defendants" in federal court named as "interested persons" in state-court petition). This is because diversity jurisdiction "requires a court to 'look beyond the pleadings' to the actual interests of the parties respecting the subject matter of the lawsuit" and determine the adversity of the parties based on the "primary matter in dispute." *Prudential Real Estate Affiliates v. PPR Realty*, 204 F.3d 867, 872–73 (9th Cir. 2000) (quoting *Continental Airlines, Inc. v. Goodyear Tire & Rubber Co.*, 819 F.2d 1519, 1522–23 (9th Cir. 1987)).

There can be no doubt that the "primary matter in dispute" is between the Trusts and FINRA. The very first sentence of the Complaint [at 1] states it is an action by the Trusts for "declaratory and injunctive relief against [FINRA]." [Complaint (Doc. 1-1) at 1.] The Trusts expressly allege [¶ 17] that a "real and present controversy has arisen between FINRA and Petitioners," and the only relief the Trusts seek [at 6–7] is against FINRA. The proper question for diversity jurisdiction, therefore, is whether the Trusts and FINRA are completely diverse. *See Prudential*, 204 F.3d at 872–73.

The Trusts argue in the Motion to Remand [at 7] that complete diversity is lacking because the "Trusts" are not legal 'entities' . . . for purposes of determining diversity jurisdiction." The Trusts claim that "[f]or diversity jurisdiction, a trust has the citizenship of its trustees." [*Id.* (citing *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894 (9th Cir. 2006)).][1] In this case, that is a distinction without a difference because the trustee of the Trusts—John Hurry—is domiciled in and a citizen of Nevada. [Complaint (Doc. 1-1) at 1.] *See also Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). Complete diversity therefore exists between him and FINRA, a citizen of Delaware and Washington D.C. [Notice of Removal ¶ 11;] *see also* 28 U.S.C. § 1332(c)(1).[2]

---

[1] The Ninth Circuit recently reaffirmed that the citizenship of traditional trusts—where the trustee "possesses certain customary powers to hold, manage, and dispose of assets for the benefit of others"—is determined by the citizenship of the trustee. *See Demarest v. HSBC Bank, USA, N.A.*, 920 F.3d 1223, 1229 (9th Cir. 2019) (quoting *Navarro Savings Ass'n v. Lee*, 446 U.S. 458, 458 (1980)). The Ninth Circuit distinguished traditional trusts from "artificial business entities" like those at issue in *Americold Realty Trust v. Conagra Foods Inc.*, 136 S. Ct. 1012 (2016), where citizenship is determined by all of the members of the entity. *Demarest*, 920 F.3d at 1229. There is no doubt that the Trusts here are traditional trusts given the Trusts' allegations that they are spinoffs of the "Hurry Trust"—administered by John Hurry and his wife—which was split into the Trusts "for tax and estate planning purposes." [Complaint (Doc. 1-1) ¶¶ 1–2.]

[2] The Trusts also criticize FINRA in the Motion to Remand [at 7–8] for not "mention[ing] the citizenship of all the '*interested parties*' to the state court proceeding, of which FINRA is only one of many." (Emphasis in original.) But the only "interested parties" named in the Complaint [¶ 14] other than FINRA are the Broker-Dealers, which themselves are citizens of Utah and Arizona and completely diverse from FINRA. *See* Utah Secretary of State, *Alpine Securities Corp.*, https://secure.utah.gov/bes/details.html?entity=856502-0142; Arizona Corp. Comm'n, *Scottsdale Capital Advisors Corp.*, https://ecorp.azcc.gov/BusinessSearch/BusinessInfo?entityNumber=10002240. The Trusts' argument [at 7–8] about the inability to partially remove

-10-

1  Because the amount in controversy is satisfied and there is complete diversity, FINRA
2  properly removed this case on the basis of diversity jurisdiction under 28 U.S.C. § 1332.

3  **II.    This Court Has Supplemental Jurisdiction Over The Remaining Claims, If Any.**

4  FINRA demonstrated in the Notice of Removal [¶ 10] that to the extent the Trusts
5  asserted any additional claims in the Complaint, this Court has supplemental jurisdiction under
6  28 U.S.C. § 1367(a). FINRA demonstrated, for example, that to the extent the Trusts seek an
7  order permitting the trustee to disclose the trust documents to FINRA, if required, those claims
8  are so related to their claims against FINRA that they form part of the same case or controversy.

9  The Trusts argue in the Motion to Remand [at 5–6] that this Court lacks supplemental
10 jurisdiction because certain claims in the Complaint "are not 'supplementary' or 'ancillary' to
11 the Trusts disputes with FINRA." The Trusts assert [at 6] that the Complaint includes unrelated
12 claims that purportedly seek a declaration of "the rights and obligations of trustees under the
13 trust instrument with respect to the disclosure of information . . . [and] to instruct the trustees to
14 relax, or modify the trust to permit an action otherwise prohibited by the express terms of the
15 trust instrument." The Trusts continue [at 6] that "this court could not even consider, let alone
16 grant, the relief requested in the Complaint even if it wanted to" because it supposedly lacks
17 original or supplemental jurisdiction to do so.

18 As a threshold matter, it is axiomatic that federal courts analyze removal based on the
19 pleadings at the time of removal. *See, e.g.*, *Tsutsumi v. Advanced Power Techs., Inc.*, No. 2:12-
20 cv-01784-MMD-VCF, 2013 U.S. Dist. LEXIS 69221, at *5 (D. Nev. May 10, 2013) (Du., J.)
21 ("A district court analyzes jurisdiction 'on the basis of the pleadings filed at the time of removal
22 without reference to subsequent amendments.'") (quoting *Sparta*, 159 F.3d at 1213). The Trusts'
23 repeated assertions that they seeks various relief unrelated to FINRA finds no support in the
24 Complaint, where they do not actually seek this relief. [*See* Complaint (Doc. 1-1) at 6–7]; *see*
25 *also supra* 4–5. The Trusts' arguments about hypothetical relief they have not sought are
26 irrelevant to removal. *See Tsutsumi*, 2013 U.S. Dist. LEXIS 69221 at *5.

27 ──────────────────── (continued)
   diversity cases is therefore irrelevant, because the Trust have not identified a single, non-diverse
28 plaintiff or "interested party."

-11-

1  Moreover, the only specific relief the Trusts ever mention in the Motion to Remand other
2  than declaratory or injunctive relief against FINRA still involves FINRA.  Specifically, the
3  Trusts argue that they need declaratory relief "regarding their rights and obligations as to the
4  disclosure of trust instruments currently prohibited by the trusts."   [Motion to Remand (Doc. 17)
5  at 3; *see also id.* at 6.]  In other words, if the Court determines that FINRA Rule 1017 requires
6  the production of the trust documents, then the Trusts supposedly need a court order authorizing
7  the documents' release.  This unpled claim plainly arises from the same "common nucleus of
8  operative fact" as the claims against FINRA, and thus is subject to supplemental jurisdiction.
9  See *Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163, 1173 (9th Cir. 2002) (quoting *United Mine
10 Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966)).

11  Finally, the Trusts argue [at 3] there are a number of other "matters" that supposedly fall
12 within the jurisdiction of a Nevada probate court that are unrelated to FINRA, like "powers to
13 confirm the appointment of trustees," "remove trustees," "ascertain beneficiaries," and "settle
14 accounts."  Again, the Trusts do not actually seek any of this relief in the Complaint, so these
15 "matters" are irrelevant to removal.  See *Tsutsumi*, 2013 U.S. Dist. LEXIS 69221 at *5.
16 Nevertheless, had the Trusts actually pled unrelated state-law claims as to which this Court
17 lacked supplemental jurisdiction, the proper course of action would be to sever these unrelated
18 claims and remand them to state court, not remand the entire action.  See 28 U.S.C. § 1441(c);
19 *People's Legislature v. Miller*, No. 2:12-CV-272 JCM (VCF), 2012 U.S. Dist. LEXIS 46603, at
20 *13–*14 (D. Nev. Apr. 3, 2012).

21 **III.   The Trusts' Arguments Against Federal Jurisdiction Are Wrong.**
22  **A.   This Is A Removable "Civil Action."**
23  In the Motion to Remand [at 3–5], the Trusts first argue—without citing a single case—
24 that this Court cannot exercise federal question or diversity jurisdiction over this action because
25 it is *in rem*.  The Trusts assert [at 3–5] that the Complaint granted the Nevada probate court *in
26 rem* jurisdiction "for all matters and purposes permitted by the Nevada Probate Code," which
27 "do not really involve civil claims or civil actions at all" and "do not involve claims against or
28 that are adverse to FINRA."

-12-

The Trusts' contention that they have filed some sort of non-removable, *in rem* proceeding that is not a "civil action" is wrong. The Supreme Court long ago held that state court actions can be removed to federal court so long as they have "the same essentials as original suits permissible in District Courts; that is that they can be readily assimilated to suits at common law or equity." *Commissioners*, 257 U.S. at 557–58. The Court thus held a state-court proceeding to determine benefits and damages from a road improvement assessment was properly removed to federal court—even though a state statute conferred exclusive jurisdiction to the county court and the Arkansas Supreme Court had previously held a similar suit was non-removable—because the matter had "all the elements of a judicial controversy." *Id.*

Applying *Commissioners*, courts have held that nearly-identical, *in rem*, state probate petitions are removable. *See In re Kendricks*, 572 F. Supp. 2d at 1197 (petition under California Probate Code § 850 was removable because it "initiates a proceeding in state court that is adversarial in nature and similar in many respects to an ordinary civil lawsuit."); *see also Cunningham v. World Sav. Bank, FSB*, No. 3:07-cv-08033 JWS, 2007 U.S. Dist. LEXIS 89302, at *5 (D. Ariz. Nov. 21, 2007) (petition to restore assets to estate filed in state probate court was properly removed to federal court). And courts have routinely rejected arguments that *in rem* proceedings cannot be removed. *See, e.g.*, *Sexton v. NDEX West, LLC*, 713 F.3d 533, 537 (9th Cir. 2013) (rejecting argument that "in effect, . . . would prevent federal courts from exercising diversity jurisdiction over any *in rem* case removed to a district court"); *C4 Ranch, Ltd. Liab. Co. v. Arnzen Bldg. Const., Inc.*, No. CV-09-387-C-BLW, 2010 U.S. Dist. LEXIS 892, at *4–*5 (D. Idaho Jan. 5, 2010) ("the Court was unable to find any case suggesting that *in rem* actions are not removable.").

Here, the Complaint is an adversarial "civil action" that is removable under 28 U.S.C. § 1441. The Complaint seeks declaratory and injunctive relief against FINRA and specifically alleges a "real and present controversy has arisen" between FINRA and the Trusts. [*See* Complaint (Doc. 1-1) ¶ 17;] *see also supra* at 4–5.

**B.     The Probate Exception Does Not Apply.**

The Trusts' argument [at 8–10] that this Court cannot exercise federal question or diversity jurisdiction over this action under the probate exception is also without merit.

The probate exception is an "exception of distinctly limited scope." *Marshall v. Marshall*, 547 U.S. 293, 310 (2006). It reserves jurisdiction over limited probate matters to state probate courts. *See id.* at 310–11. However, "unless a federal court is endeavoring to (1) probate or annul a will, (2) administer a decedent's estate, or (3) assume in rem jurisdiction over property that is in the custody of the probate court, the probate exception does not apply." *Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1252 (9th Cir. 2017).

The Trusts do not contend—nor could they—that the first two exceptions are applicable. Like in *Goncalves*, "[t]here is no will or estate—indeed, there is no decedent." *Id.* at 1253. The same is true here.

The Trusts do contend [at 9], however, that this matter falls within the third probate exception. The third exception is "an application of the prior exclusive jurisdiction doctrine." *Goncalves*, 865 F.3d at 1253. That doctrine merely "prohibits federal and state courts from ***concurrently*** exercising jurisdiction over the same *res*." *Id.* at 1253 (emphasis added); *see also Marshall*, 547 U.S. at 311 ("when one court is exercising *in rem* jurisdiction over a res, a second court will not assume *in rem* jurisdiction over the same res."). Because the doctrine turns on concurrent jurisdiction, it only applies when the state court first exercised jurisdiction over the property ***and*** "retains that jurisdiction in a separate, concurrent proceeding." *Sexton*, 713 F.3d at 536–37. If the defendant removes the *in rem* case to federal court, however, "the state court's jurisdiction over the property terminates, and the federal court's jurisdiction begins," so "the doctrine of prior exclusive jurisdiction is inapplicable." *Id.* at 537 (citing 28 U.S.C. § 1446(d)).

*Sexton*—which the Trusts fail to cite in the Motion to Remand—is controlling and forecloses their argument. When FINRA removed this action to this Court, the Nevada Probate Court's jurisdiction ended, and there is no concurrent jurisdiction that needs protecting by the prior exclusive jurisdiction doctrine. *Sexton*, 713 F.3d at 536–37.

-14-

### C. This Court Has Jurisdiction To Dismiss.

Finally, the Trusts argue [at 2, 6] that it is a "contradiction" or "paradox" for FINRA to remove this action to federal court and then seek dismissal because the Trusts' claims must be asserted through the Exchange Act's comprehensive administrative review process. [*See* Motion to Remand (Doc. 17) at 2, 6.] But there is no paradox; this is simply the consequence of Congress granting exclusive federal jurisdiction over the Exchange Act, 15 U.S.C. § 78aa, while simultaneously requiring FINRA to establish a process for exclusive review of its enforcement decisions, 15 U.S.C. § 78s(d)(2).

On this point, *Turbeville* is instructive. There, the Eleventh Circuit affirmed the district court's refusal to remand where resolution of the plaintiff's state-law claims necessarily turned on the interpretation of FINRA's rules and regulations. 874 F.3d at 1275. However, the court also affirmed dismissal of the complaint because "FINRA's administrative-review process" was the "sole venue[] through which FINRA-affiliated parties can challenge SROs' regulatory and enforcement conduct for compliance with their own internal rules." *Id.* at 1276–77. The Eleventh Circuit held that "the District Court did not err when it found that it had jurisdiction to deny remand to state court but not jurisdiction to afford relief under a federal cause of action that does not exist." *Id.* at 1277.

Similarly, in *Sparta*, the Ninth Circuit recognized that, normally, "federal question jurisdiction cannot lie absent a private right of action," which would require remand "if jurisdiction in this case had been solely predicated on 28 U.S.C. § 1331." 159 F.3d at 1212. However, because the state-law claims involved purported violations of NASD's own rules and thus implicated federal issues under the Exchange Act, they were "committed exclusively to federal jurisdiction" under 15 U.S.C. § 78aa. *Id.* at 1212–13. The Ninth Circuit thus held that the district court properly denied remand before dismissing the lawsuit because plaintiff lacked a private right of action. *Id.*

Finally, in another case involving FINRA's predecessor, NASD, a Texas district court denied a motion to remand before dismissing the complaint for lack of subject-matter jurisdiction. *Browne v. NASD*, No. 3:05-CV-2469-G ECF, 2006 U.S. Dist. LEXIS 90657, at *15

LEACH KERN GRUCHOW ANDERSON SONG
2525 Box Canyon Drive, Las Vegas, Nevada 89128
Telephone: (702) 538-9074 – Facsimile: (702) 538-9113

(N.D. Tex. Dec. 14, 2006). The defendant moved for reconsideration, advancing essentially the same "paradox" argument that the Trusts assert here. *Id.* at \*16 ("defendant is 'arguing out of both sides of its mouth' because NASD removed the case to federal court claiming proper jurisdiction only to later challenge such jurisdiction."). The district court disagreed, holding plaintiffs' arguments failed "to comprehend the notion of exclusive federal jurisdiction," which existed because plaintiffs' state-law claims sought to enforce NASD's duties under the Exchange Act. *Id.* at \*16–\*17. Removal to federal court was thus "a necessary step in the process of this litigation because the state court did not have authority to continue this action." *Id.* at \*17. Removal also advanced the "purpose of exclusive federal jurisdiction—to have a federal court rule on these important preliminary issues." *Id.* at \*18. And because there was exclusive federal jurisdiction, "there was no state court to which this court could have remanded the case." *Id.*

Against this authority and in support of remand, the Trusts cite *Dennis v. Hart*, 724 F.3d 1249 (9th Cir. 2013), where the Ninth Circuit held that "the district court lacked jurisdiction to do anything other than remand." [Motion to Remand (Doc. 17) at 11.] But the Ninth Circuit in *Dennis* held the state-law claims did ***not*** fall under exclusive federal jurisdiction in 15 U.S.C. § 78aa because "the plaintiffs admit[ted] that [defendant] complied with the Exchange Act and allege[d] only violations of state laws." 724 F.3d at 1253. *Dennis* therefore says nothing about the proper outcome in this case, where the Trusts allege FINRA violated its own rules [Complaint (Doc. 1-1) ¶ 10] and their entitlement to relief against FINRA depends entirely on the construction of FINRA's rules, which undoubtedly falls under exclusive federal jurisdiction. *See Merrill Lynch*, 136 S. Ct. at 1570; *Sparta*, 159 F.3d at 1212; *Turbeville*, 874 F.3d at 1275.

The Trusts also cite [at 12] *Lippit v Raymond James Fin. Servs., Inc.*, 340 F.3d 1033 (9th Cir. 2003), which is of no help to them. There, plaintiff brought state-law claims against several national brokerage firms for the deceptive marketing of certain financial products. *Id.* at 1036–39. The Ninth Circuit held that the complaint did not arise under federal law because even though it "implicates a federally regulated security, it does not directly challenge a right or liability under the Exchange Act — it merely challenges Defendants' purportedly deceptive sales tactics under California state law." *Id.* at 1044. But the Ninth Circuit also expressly recognized

-16-

that "if [plaintiff] were asserting a violation of an SRO rule, then, as the parties both agree, this would be a matter of exclusive federal jurisdiction." *Id.* at 1042. That is patently the case here, because the Trusts cannot obtain declaratory judgment against FINRA that they do not have to produce certain documents to maintain membership unless that is true under FINRA's rules. *See Sparta*, 159 F.3d at 1212; *Turbeville*, 874 F.3d at 1275.

Finally, the Trusts cite [at 12–13] three federal district court decisions where the courts held they lacked jurisdiction over claims against FINRA that did not seek to enforce a specific duty against FINRA. But all three of these cases involved FINRA Rule 2080(a), which provides that members may have certain information expunged from FINRA's Central Registration Depository ("CRD") if they "obtain an order from a court of competent jurisdiction directing such expungement." The courts thus recognized that FINRA itself had recognized that any "court of competent jurisdiction" could resolve these limited expungement matters not actually governed or controlled by a separate, substantive FINRA rule. *See In re Lickiss*, No. C-11-1986 EMC, 2011 U.S. Dist. LEXIS 66437, at *11–*12 (N.D. Cal. June 22, 2011); *accord Spalding v. FINRA*, No. 1:12-CV-1181-RWS, 2013 U.S. Dist. LEXIS 37291, at *15 (N.D. Ga. Mar. 18, 2013); *Godfrey v. FINRA*, No. CV 16-2776 PSG (PJWx), 2016 U.S. Dist. LEXIS 105115, at *10 (C.D. Cal. Aug. 9, 2016). These cases have no applicability here because this case turns on the proper application of FINRA Rule 1017, not the expungement of customer complaint information under FINRA Rule 2080(a).

It is therefore clear that this action falls under the exclusive federal jurisdiction in 15 U.S.C. § 78aa. This exclusive federal jurisdiction exists even if this Court cannot grant the relief the Trusts seek due to the exclusive administrative review process. [*See* Motion to Dismiss (Doc. 11) at 7–10.] Nor is remand even possible because—due to exclusive federal jurisdiction—there is "no state court to which this [case] could have [been] remanded." *Browne*, 2006 U.S. Dist. LEXIS 90657 at *18; *see also Bell v. City of Kellogg*, 922 F.2d 1418, 1425 (9th Cir. 1991) ("district court correctly denied the motion to remand and dismissed the state claims" where the "state court would have simply dismissed the action on remand"); *c.f. Rudolph v. Fulton*, 178 Cal. App. 2d 339, 342 (1960) (affirming dismissal of claim against NASD where,

-17-

1  due to exclusive administrative proceedings, "relief can be obtained only in the federal Circuit
2  Court of Appeals").

3  Finally, even accepting the Trusts' flawed jurisdictional analysis regarding the effect of
4  FINRA's exclusive administrative review process, this Court presiding over the Trusts' claims
5  does not create any supposed "paradox" because, according to the Trusts' own admission, "the
6  Trusts are not even parties to the FINRA regulatory proceeding."  [Motion to Remand (Doc. 17)
7  at 2.]

### **Conclusion**

For the foregoing reasons, FINRA respectfully requests that the Court deny the Motion to Remand.

RESPECTFULLY SUBMITTED this 21st day of June, 2019.

**LEACH KERN GRUCHOW ANDERSON SONG**

*/s/ Sean L. Anderson*
Sean L. Anderson
Nevada Bar No. 7259
Ryan D. Hastings
Nevada Bar No. 12394
2525 Box Canyon Drive
Las Vegas, Nevada 89128

LEACH KERN GRUCHOW ANDERSON SONG
2525 Box Canyon Drive, Las Vegas, Nevada 89128
Telephone: (702) 538-9074 – Facsimile (702) 538-9113

**CERTIFICATE OF SERVICE**

Pursuant to FRCP 5(b), the undersigned, an employee of LEACH KERN GRUCHOW ANDERSON SONG, hereby certifies that on the 21st day of June, 2019, a copy of the foregoing, **OPPOSITION TO MOTION TO REMAND** was electronically filed with the Clerk of the Court for the United States District Court by using the Court's EM/ECF system and served through the Court's Notice of electronic filing system automatically generated to those parties registered on the Court's Master E-Service List as follows:

William E. Peterson
(wpeterson@swlaw.com)
Janine C. Prupas
(jprupas@swlaw.com)
SNELL & WILMER L.L.P.
50 West Liberty Street, Suite 510
Reno, Nevada 89501

*/s/ Robin Callaway*
An Employee of LEACH KERN GRUCHOW ANDERSON SONG