William E. Peterson, Bar No. 1528
Janine C. Prupas, Bar No. 9156
SNELL & WILMER L.L.P.
50 West Liberty Street, Suite 510
Reno, Nevada 89501
Telephone: 775-785-5440
Facsimile: 775-785-5441
Email: wpeterson@swlaw.com
         jprupas@swlaw.com

*Attorneys for Petitioners*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| IN THE MATTER OF THE<br><br>PEE PEE POP TRUST, PEE PEE POP TRUST II, PEE PEE POP TRUST III, MAN CUB TRUST, MAN CUB TRUST II, MAN CUB TRUST III, DATED JULY 22, 2013. | Case No.   3:19-cv-00240-MMD-CBC<br><br>**REPLY IN SUPPORT OF MOTION TO REMAND** |

Comes now, John Hurry, Trustee of Pee Pee Pop Trust, Pee Pee Pop Trust II, Pee Pee Pop Trust III, Man Cub Trust, Man Cub Trust II and Man Cub Trust III dated July 22, 2013 (collectively the "Trusts"), and Alpine Securities Corporation ("Alpine") and Scottsdale Capital Advisors Corporation ("Scottsdale" and collectively the "Corporations") and files this Reply to Financial Industry Regulatory Authority, Inc.'s ("FINRA") Opposition to Motion to Remand.

### I.   There is no Federal Question Jurisdiction

FINRA's Opposition to Motion to Remand ("Opposition") is bottomed on the proposition that the Trusts' Petition to the Nevada State Probate Court to Assume In Rem Jurisdiction over the Trusts arises under federal law. FINRA claims this to be so because *"the Trusts' claims necessarily depend on the interpretation of FINRA Rule 1017, which 'unavoidably involves answering federal questions.'"* Opposition (Doc. 22) at p. 2:21-24. But the Trusts' petition nowhere requests the probate court to interpret FINRA Rule 1017, nor does the relief requested require any court to interpret that rule. Rule 1017 merely requires an applicant for change of ownership to name the new owners, their percentage ownership, and the sources of their funding

for the purchase or recapitalization, all of which was provided in the Certificates of Trust and affidavit of Trust Counsel. Those documents pointed out that the former trusts that indirectly owned FINRA members Alpine and Scottsdale (through SCA Clearing LLC), was merely restructured from two trusts to six trusts for tax and estate planning purposes reasons, with the same trustees and the same beneficiaries in the same ownership amounts. *See* Affidavit of Eric L. Johnson (Doc. 1-6 at p. 27), and FINRA Rule 1017 attached as Exhibit 1.

The issue presently before the court is not materially different from those presented in the three district court cases cited in the motion to remand: *Lickiss v FINRA*, 2011 WL 2471022 (D. Cal. 2011), *Godfrey v. FINRA*, 2016 WL 4224956 (C.D. Cal. 2016) and *Spalding v. FINRA*, 2013 WL 11129396 (N.D. Ga. 2013), and one additional case, *Flowers v. FINRA*, 2015 WL 9487450 (S.D. Cal. 2015) which adopted the holdings and reasoning of the other three cases.

FINRA attempts to distinguish these cases on the ground that FINRA rules permitted court action to expunge FINRA disciplinary rules (without specifying which court). But that fact is irrelevant to the analysis because in each case FINRA argued (as it does here), that the issues raised federal questions relating to the meaning and interpretation of FINRA rules regarding the requirement to maintain and preserve records, and that jurisdiction lays with the federal court under 28 U.S.C. § 1331 and 28 U.S.C. § 1441(a). The district courts rejected that argument in each case on the ground that there was nothing in FINRA rules that imposed on FINRA any duty or obligation to expunge records and the action was therefore not brought for the purposes of asserting a violation of FINRA rules, interpreting FINRA rules, nor to enforce any FINRA rules, but merely to obtain an adjudication of a state right of action to expunge records maintained by FINRA, a private corporation subject to both state and federal law. In *Lickiss,* the court also rejected an argument implicitly raised by FINRA here: *"FINRA takes the more general position that, because it cannot have any duties outside those created by the Securities Exchange Act, this Court must have exclusive jurisdiction. But this begs the question: What duty does Mr. Lickiss seek to enforce within the meaning of § 78aa?"*

The court found no such duty under the act, nor did the court construe the plaintiff's pleading as a claim for enforcement of, or for violation of the Securities Act or any NASD rules.

- 2 -

As such, the court held that FINRA could be sued in state court to expunge the plaintiff's disciplinary records. Similarly here, a state court should be able to enter a decree that the trustees may present a certification of trust to FINRA, as any other person, in lieu of a copy of the trust instrument to establish the existence and terms of the trust.

A similar issue was presented to the federal district court in *Godfrey v. FINRA*, 2016 WL 4224956 (C.D. Cal. 2016). In *Godfrey*, FINRA argued that the plaintiff's expungement action required the court to interpret FINRA rules regarding discipline, enforcement, recordkeeping and sanctions, and implicated FINRA's overall disciplinary framework, which included administrative and judicial processes. As in *Lickiss, supra,* the court acknowledged that while FINRA had a duty to permanently maintain and publish records regarding final regulatory action, there was nothing in the rules cited by FINRA that created any corresponding duty to expunge, and therefore no need for the court to interpret any rules: *"the Court fails to see how…Rule 8312(c)(1) clearly establishes that information relating to a person with the described characteristics has no expiration date on the CRD. But the Court fails to see how Rule 8312 is any different than § 78o-3(i)(1)(A); it requires the maintenance and availability of certain information, but says nothing about any FINRA duty to expunge this information."* Likewise here, Rule 1017 cited by FINRA merely says that an application shall contain certain information, but does not say that such information must be provided in conjunction with a full-blown trust instrument protected from disclosure under Nevada law. The Trusts' position does not seek any interpretation of Rule 1017, nor does the relief requested in the petition require any such interpretation.

In *Spalding v. FINRA*, 2013 WL 1129396 (N.D. Ga. 2013), the court analyzed the issue in the context of whether a substantial issue of federal law was presented. The court first observed that *"[t]he mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction"* unless the state claim necessarily *"raises a stated federal issue, that is actually disputed, and substantial, which a federal court may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."* The court held that whether FINRA is obligated to expunge records pursuant to state law did not

- 3 -

present such an issue, and that normally *"fact-bound and situation-specific issues like this one [expungement] do not trigger federal question jurisdiction." Adventure Outdoors, Inc.,* 552 F.3d 1299 (11th Cir. 2006); *Empire Healthcare Assur., Inc. v. McVeigh,* 547 U.S. 677, 700 (2006). The court also noted that there were no substantive requirements in the rules governing expungement, but only that expungement is available, and therefore the case presented no substantial issue of federal law. Likewise here, Rule 1017 merely requires disclosure of ownership and sources of funding, but nothing else. FINRA Rule 1017 does not conflict with, or even implicate NRS 164.400 regarding the manner in which such information may be presented to anyone in various contexts and circumstances.

The holdings in the aforementioned cases are directly analogous to and applicable to this case. The Trusts' state court petition merely seeks a determination that FINRA, as a person under state law, and doing business in Nevada directly affecting these trusts is subject to Nevada law, and that proof of the existence and terms of the trust is satisfied by presenting a certificate of the trust with applicable provisions required by statute. Such determination does not, in any way require the state court to interpret or enforce any FINRA rules, any more than subjecting FINRA to state expungement statutes requires courts to interpret or enforce any FINRA rules.

The Trusts are mindful that the Supreme Court interpreted the jurisdictional grant under Section 27 of the Securities Act ("federal courts have exclusive jurisdiction of all suits in equity and actions at law brought to enforce any liability or duty created by the Exchange Act or the rules or regulations thereunder" (15 U.S.C. § 78a(a)) to correspond to the "arising under" requirement for invocation of federal question jurisdiction under 28 U.S.C. § 1331). *See Merrill Lynch Pierce Fenner & Smith v. Manning,* 136 S.Ct. 1562 (2016). But that judicial accretion to the body of jurisdictional common law in securities cases is relevant and helpful to the Trusts' position here, as manifested by the very holding in that case, which remanded the case to state court for adjudication on the ground that the issue presented state law, and not federal law claims, even though the conduct at issue actually violated the federal securities laws and the complaint actually described such violation in support of the plaintiff's state law claims. At issue in *Merrill Lynch* was a claim for damages for engaging in "naked short sales" (sales of securities that the

seller did not own, possess or have a right to acquire). Such activity is prohibited by federal law, but the plaintiff asserted only state law claims, although his complaint described, at length, the violation of the federal securities laws.

The court affirmed the Third Circuit's decision remanding the case to state court. In affirming, the court rejected Merrill Lynch's proposed rule that any claim stating or describing a violation of the federal securities laws, raised federal questions "per se." The respondents argued on the other hand, however, that federal jurisdiction attached only if federal claims were actually asserted, regardless of whether the source of the claims originated in federal duties. The court rejected both proposals opting instead for the time honored rule that a federal question is presented in two circumstances: First, and *"[M]ost directly, and most often, federal jurisdiction attaches when federal law creates the cause of action asserted…[Second] But even when 'a claim finds its origins' in state law, there is a special and small category of cases in which arising under jurisdiction still lies.' …As this Court has explained, a federal court has jurisdiction of a state-law claim if it **'necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance' of federal and state power."***

The Third Circuit applied that test to determine whether the claims asserted by the plaintiff were subject to the exclusive jurisdiction of Section 27 of the Exchange Act, and concluded that even though the complaint described a violation of the federal laws prohibiting "naked sales," the complaint did not allege, nor did it require proof of any violation of federal law, and the order to remand was therefore affirmed.

Likewise, here, state law provides that trustees can prove the existence and terms of a trust by providing a certificate of trust, in lieu of the actual trust instrument. That requirement implements an important public policy of the state of Nevada to maintain the confidentiality of trust documents. *See* Motion (Doc. 17) at p. 4, Doc. 1-1 at p. 4, and Doc. 1-6 at p. 4. There are no FINRA rules (including Rule 1017) that speak to any requirement to produce trust instruments to prove the existence of the trust or to identify the beneficiaries or ownership of trusts. The provision of trust certificates in satisfaction of that requirement does not raise any issue under the

- 5 -

Exchange Act, or FINRA rules. Nor is any substantial federal question raised by such issue, and adjudication by the federal court, would, in fact, upset the congressionally approved balance of federal and state power, as manifested by the important state policies intended to be implemented by NRS 164.400, and the Ninth Circuit's holding that there is nothing in the Exchange Act or any rules indicating that Congress intended to totally displace state law. *See* Motion (Doc. 17) and authorities cited at p. 12.

In *Merrill Lynch, supra,* the Supreme Court reiterated the principles that: (1) jurisdictional statutes are not to be read to expand beyond what the language permits out of respect for the independence of state governments, (2) to abjure a broad reading of jurisdictional statutes, especially in the context of statutes conferring exclusive jurisdiction (*i.e.,* to narrow the scope of the exclusivity), and (3) more importantly, in order to respect the "power of the States to provide for the determination of controversies in their courts." All of these principles, in conjunction with the aforementioned authorities strongly support a remand in this case.

## II.     There is No Diversity Jurisdiction

FINRA's summary dismissal of the Trusts' objection to diversity jurisdiction is too facile. FINRA does not dispute that its petition under 28 U.S.C. § 1331 is wholly insufficient on that score by identifying the trusts as the adverse parties and claiming their residence to be in Nevada. They also do not fairly address the "probate" exception to the exercise of diversity jurisdiction and blithely contend that this court can enter an in-rem order under the Nevada Probate Code, instructing the trustees and relaxing the terms of the trust as to the disclosure of trust instruments.

But how shall the court grant such relief that is *"binding in rem upon the trust estate and upon the interests of all beneficiaries vested or contingent"* [NRS 164.015(6) and NRS 164.030] in the absence of all interested parties as defined by Nevada law, who must be joined in the action to effectuate such an order? *Id.;* NRS 155.010; 132.185. FINRA answers this objection by arguing that no such claim (for instructions or to amend the trust) was pled, and further, without citation, that the court has power to do so under the doctrine of supplementary jurisdiction. First, contrary to FINRA's assertion, such claims formed an integral part of the removed petition as set forth in the removed petition (Doc. 1-1). at pp. 2:2-4, 2:12-15 and 5:6-8. Second, an order

directing trustees and/or relaxing or modifying terms of an intervivos Nevada trust constitute classic types, forms or requests for "pure probate" relief, relating to the internal affairs of an intervivos trust that falls squarely within the probate exception to the exercise of federal jurisdiction. *See* NRS 164.010, NRS 164.015 incorporating NRS 153.031(g)(n) (instructing trustees and modifying trusts).[1]

It is for this reason that the petition for removal with respect to diversity jurisdiction is also inadequate, in that under diversity jurisdiction, as opposed to federal question jurisdiction (which does not exist here), only entire actions may be removed, but not separate claims or components of an action. *See* discussion in Motion (Doc. 17) at pp. 7-8.

### III. Conclusion

FINRA's arguments here essentially mirror those advanced by *Merrill Lynch, supra,* and FINRA in *Lickiss, supra,* that anything related to transactions in securities implicates federal law, and because FINRA is a Self-Regulating Organization under rules enacted under the Exchange Act, anything related to FINRA's activities must also necessarily implicate federal law. The courts, however, have recognized that state law is not preempted by the Exchange Act, nor does everything FINRA does or omits to do implicate federal law. Removal jurisdiction over FINRA, a private corporation, is determined in the customary way, and under the customary principles that: (1) the removal statute is strictly construed against removal, (2) there is a strong presumption against removal, (3) removal jurisdiction is rejected if there is any doubt as to the right of removal, (4) all ambiguities are resolved in favor of remand, (5) jurisdictional statutes are not to be read or construed beyond what their language permits, and finally, (6) removal statutes are not to be broadly construed.

The petition filed by the Trusts asking the Nevada State Probate Court to assume In Rem Jurisdiction over the Trusts does not raise any federal questions because it does not seek or

---

[1] FINRA's summary dismissal of the Trusts' claims that in rem jurisdiction did not attach in the state court because such jurisdiction was wrested away by the removal petition is a classic bootstrap argument. NRS 164.010 states upon petition, the District Court "at the time of filing of the petition…shall assume in rem jurisdiction over the trust." In addition, prior to removal the state issued three orders assigning the case after a hearing had been schedule for June 12. *See* Doc. 1-6, pp. 178, 182-184.

- 7 -

require the probate court to interpret any FINRA rules, nor does it seek to enforce any rules, nor does it allege any violation of any FINRA rules, nor does it raise any state or federal issue that is actually disputed and substantial. The issue raised here is no different in scope or degree than those issues seeking to require FINRA to expunge records which federal courts have consistently held did not raise any substantial federal questions. Finally, the petition is fatally deficient with respect to establishing the requirements of diversity jurisdiction, which, even if diversity were otherwise established, would not be sufficient to obtain jurisdiction under the probate exception to the exercise of federal jurisdiction because diversity only actions may be removed, but not separate claims.

Dated: July 8, 2019

SNELL & WILMER L.L.P.

By: /s/ William Peterson
William E. Peterson, No. 1528
Janine C. Prupas, No. 9156
50 West Liberty Street, Suite 510
Reno, Nevada 89501

*Attorneys for Petitioners*

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, I electronically filed the foregoing with the Clerk of Court for the U.S. District Court, District of Nevada by using the Court's CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

DATED: July 8, 2019

By: /s/ Holly W. Frye
An employee of Snell & Wilmer L.L.P.