William E. Peterson, Bar No. 1528
Janine C. Prupas, Bar No. 9156
SNELL & WILMER L.L.P.
50 West Liberty Street, Suite 510
Reno, Nevada  89501
Telephone:  775-785-5440
Facsimile:  775-785-5441
Email: wpeterson@swlaw.com
          jprupas@swlaw.com

*Attorneys for Petitioners*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| IN THE MATTER OF THE<br><br>PEE PEE POP TRUST, PEE PEE POP TRUST II, PEE PEE POP TRUST III, MAN CUB TRUST, MAN CUB TRUST II, MAN CUB TRUST III, DATED JULY 22, 2013. | Case No.   3:19-cv-00240-MMD-CBC<br><br>**MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

**I. Introduction & Summary of Request**

This is a Motion for Temporary Restraining Order and Preliminary Injunction to preclude Financial Industry Regulatory Authority ("FINRA") from suspending the Membership Interests of Petitioners Alpine Securities Corporation ("Alpine") and Scottsdale Capital Advisors Corporation ("Scottsdale", and collectively the "Members"), for providing to FINRA, in connection with a Continuing Membership Application (CMA), Certificates of Trust (as expressly permitted under Nevada law under NRS 163.400), instead of the complete and entire trust instruments of Pee Pee Pop Trust, Pee Pee Pop Trust II, Pee Pee Pop Trust III, Man Cub Trust, Man Cub Trust II, and Man Cub Trust III, all dated July 22, 2013 (the "Trusts"), which trusts collectively indirectly own (through separate holding companies), both Alpine and Scottsdale in equal 16.66% shares. Because the suspensions were ordered by FINRA on Thursday, August 15, 2019, the suspensions have already occurred, and this motion therefore seeks a mandatory injunction to lift or suspend those suspensions, pending ultimate judicial outcome of the merits of this dispute. Pending relief from this court, Alpine and Scottsdale have been put out of business, and rendered unable to provide

assistance to innocent third parties in liquidating or managing their accounts.

As set forth more fully below, the requirements for both species of injunction (prohibitory and mandatory) are established. As set forth in the Declaration of William Peterson (Exhibit A), copies of this Motion were electronically filed (and presumed concomitantly served) on FINRA's attorneys in this proceeding, and in addition served on the attorneys for FINRA electronically by email, also concomitantly with the electronic filing of this motion.

As set forth more fully below, and in the Declaration of John Hurry (Exhibit B), Scottsdale and Alpine have been members of FINRA in good standing for a combined period of more than 50 years. After a FINRA administrative hearing on Thursday, August 15, 2019, FINRA suspended their membership interests in FINRA, thereby completely shutting their businesses down for failure to produce to FINRA, for FINRA's review and examination, the entire trust instruments for all the Trusts in connection with Continued Membership Applications (CMAs). FINRA required the Members to file the CMAs as a condition of their continued FINRA membership, based on the proposition that the restructuring or reorganization of the Hurry Family Estate Plan, that divided the two existing family trusts that formerly indirectly owned the Members, into six trusts brought about a change in "ownership" of the Members, requiring a CMA, even though the six trusts had identical settlors, beneficiaries and provisions as the former two family trusts.

Alpine and Scottsdale objected to the filing requirements on the principal grounds (1) that there were no ownership changes in Alpine or Scottsdale requiring a CMA because both entities continued to be owned by the same holding companies, (SCA Clearing in the case of Alpine, and SCA Holdings in the case of Scottsdale), and (2) nor were there any changes in indirect ownership, because each of the two holding companies were formerly owned by two Hurry Family Trusts in equal shares, but solely for tax and estate planning purposes, those two trusts were further divided into six trusts, each holding or owning the two Members in six equal shares. All Trusts had the same trustees and beneficiaries (which collectively constitutes the entire legal and equitable ownership interest), and also had the same operative provisions as the former two Hurry family trusts, again establishing no change in ownership or any change in the indicia or accoutrements of ownership.

1       The issue presented to the State Court in this removed action is different. That issue is whether FINRA's demand to review and inspect the entire trust instruments is covered by and satisfied by providing to FINRA certificates of trust under NRS 164.400. That statute provides: *"A trustee may present a certification of trust to any person, in lieu of a copy of the trust instrument, to establish the existence or terms of the trust. The Trustee may present the certification voluntarily or at the request of the person with whom the trustee is dealing."* Under this statute, a person includes any organization. See NRS 132.260 incorporated into Chapter 164 by NRS 164.005.

      As was explained in the points and authorities set forth in the Trust's Opposition to Motion to Dismiss (Document No. 16) and Motion to Remand (Document 17), whether the Trusts can satisfy a demand from anyone, including FINRA, to produce the entire trust document by providing the certifications permitted under Nevada law, does not present a question arising under the laws or Constitution of the United States, any more than the question of whether FINRA is obligated under state law to expunge disciplinary records of members (which the federal courts have routinely and unanimously agreed does not present a federal question) does not present a federal question. Nor is FINRA, a private corporation, registered with the Nevada Secretary of State doing business in Nevada, otherwise immunized from compliance with state law. See Points and Authorities in Support of Motion to Remand (Document 17) and in particular Reply to Motion to Remand (Document 26) at pages 2-7.

      The Trusts have explained the important public policy purposes served by NRS 164.400, in maintaining, to the fullest extent possible, the confidentiality of trust and estate provisions, which is not only important under standard trust and estate law, but especially critical in states like Nevada, which strive to maintain Nevada as an advantageous domicile for trust and testamentary matters, and which advantages, in turn, are largely based on the promise and guarantee of confidentiality with respect to estate and trust matters, as well as the tax advantages of being domiciled in Nevada. See Opposition to Motion to Dismiss (Document 16) at pages 9-11.

      In Nevada, and almost all jurisdictions, testamentary instruments, including "*intervivos*" trusts (as are all the Trusts at issue), are privileged, and protected from disclosure under various statutes and laws, including the attorney client privilege. The principal reason for this is that they

- 3 -

represent purely private "present intentions" as to future dispositions, which may, and frequently do change prior to the time they become effective and irrevocable on death, and if communicated to or from counsel, or are prepared by counsel, (as they were here) they remain attorney client privileged. See authorities cited at pages 10-11 of Opposition to Motion to Dismiss (Document 16), holding that intervivos trusts are essentially "will substitutes" including for purposes of establishing the "*probate exception*" to both Diversity and Federal Question Jurisdiction in the Ninth Circuit. *Gonglaves v. Rady Children's Hospital San Diego*, 865 F.3d 1237 (9th Cir. 2017).

In *Clark v. Second Judicial District Court*, 101 Nev. 53, 892 P.2d 512 (1985) the Nevada Supreme Court emphasized the confidentiality protections afforded testamentary instruments, citing to multiple cases in many other jurisdictions holding that prior to death, wills remain highly confidential documents protected from disclosure under various doctrines, including the attorney client privilege, and that previous wills, including draft wills, remain subject to that privilege even after death.[1] See also, *In Re Smith's Estate*, 57 N.W.2d 727 (Wis. 1953); *De Loan v. Myers*, 109 S.E. 2d 777 (G. 1959); *Estate of Voeker*, 396 N.E.2d (Ind 1979); *Stegman v. Miller*, 515 S.W.2d 244 (Ky. 1974); *McCaffery v. Estate of Brennan*, 533 S.W.2d 264 (MO. 1976).

The important public policy considerations underlying this principle come clear in a variety of very commonly occurring contexts. For example, suppose, in an intervivos trust instrument providing for all income to the Settlor, and discretionary invasions of principal during his or her life, (which is very common) with remainder to heirs or others, the Settlor decides, for reasons personal to him or her, to disinherit an heir, or a spouse, or to make a major bequest to an institution, or a charity, all of which, for obvious reasons (including the possibility of future changes) remain highly confidential and secret. By what right (or need) would FINRA or anybody else, have or possess under any law, to examine such provisions that do not take effect until after death? Benefactors, (including benefactors of future interests), frequently seek anonymity to preclude supplication, recrimination, harassment and interference with their testamentary (or even current) dispositions, during their lifetimes. By what right or interest does FINRA demand such

---

[1] There are obviously exceptions including will contests based on undue influence or where claimants claim through the same person, thereby neither invading a privilege).

- 4 -

information? Suppose that the Settlor elects to change or alter the testamentary provisions of an intervivos trust, providing for a new beneficiary or removing one, or to change the respective bequests. Such change would, under trust law, effect a change in the beneficial ownership. Would the trusts then be obligated to file a CMA and produce such amendment to FINRA for its review and approval? If not, then by what right or need does FINRA have to demand to review and examine the entirety of Trust Instruments. One should not be required to forfeit ones right to privacy, confidentiality and attorney client privileges to FINRA as a condition to engaging in the securities business.

Under FINRA's view of the world, one is obligated to forgo changing the testamentary or residual (remainder) provisions of an intervivos trust holding his or her present interest, because FINRA forbids it *unless* FINRA is permitted to examine, review and *approve or reject* such testamentary dispositions. If FINRA has no right in law to consider such changed provisions in connection with the merits of approving or rejecting a CMA, by what right then does FINRA purport to have or assume to even *know about* such revisions, let alone review and approve them? Does FINRA have the right to condition membership in FINRA (which is required in order to do business under the Exchange Act) on review and approval of a member's will? If the answer to that question is no, and if an intervivos trust is a "will substitute" (which the Ninth Circuit says it is), then FINRA is not permitted to review and examine an intervivos trust as a condition to continued membership. The right of a person to review a trust instrument to inspect such provisions in connection with doing business in Nevada, is limited to reviewing the Trust Certificate, which provides a party with all they need to know about a trust to protect their business or governmental interests. (NRS 164.400 applies to all governments and all their agencies as well).

That is not to say, however, that FINRA is not entitled to understand present operation, ownership and control, but without having any need to know or to have another party disclose the highly confidential and sensitive provisions of the trust, which are predominately very private family matters, having the tendency to cause considerable family and personal disruption on disclosure, but have no consequence whatsoever on third parties doing business with a trust. Such policy is expressly contemplated and provided for in the statutory Certificate of Trust, and for

precisely that reason, which is its entire purpose under Nevada law, as well as the law in several other states, including, for example laws regulating state and federal banks in opening or closing accounts. Such entities may have a need to verify the legal existence and operative provisions of their trust customers (for example who can sign checks), but have no need to know or to require the settlors of such trusts to disclose their most private and sensitive affairs to the bank (such as disposition on death), and that are otherwise totally irrelevant to the bank's needs and purposes. The Certificate satisfies this purpose in identifying present ownership, control and operation. Testamentary or other irrelevant provisions are not required to be disclosed, because disclosure serves no purpose other than to satisfy one's prurient interest in a members estate plan, but has the potential to cause considerable mischief and permanent family disruption.

FINRA has obdurately refused to accept the Certificates, and effective Thursday, August 15, has shut Alpine and Scottsdale businesses down for failing to provide full trust instruments for all the Trusts. In fact, FINRA not only demands copies of the trust instruments, but time to study and evaluate them, and the right to keep and maintain those instruments in its files. See, Exhibit A to the Declaration of William Peterson, attached.

For the reasons set forth below, FINRA should be restrained or enjoined from terminating the membership interests of Alpine and Scottsdale until such time as this court, or the state court on remand, has an opportunity to determine whether FINRA is obligated to comply with Nevada law to accept certificates of the Trusts in lieu of trust instruments to *"to establish the existence or terms of the trust. The Trustee may present the certification voluntarily or at the request of the person with whom the trustee is dealing."*

**II. Current Status of Proceedings**

Other than this Motion for Temporary Restraining Order and Preliminary Injunction, presently before the court are two Motions that were briefly discussed above. The first is a Motion to Remand to the Second Judicial District Court of the State of Nevada for Washoe County, Nevada, a Petition filed by Trustee John Hurry, to Assume In Rem Jurisdiction over six Nevada domiciled Inter Vivos Trusts under NRS 164.010 and NRS 164.015 seeking instructions, and an order and decree that the trusts will have satisfied their obligations to FINRA (as well as anybody else) to

provide information regarding the trusts in the form of Certifications of Trust, rather than provide the Settlor's entire estate plan as expressly permitted under Nevada law. That motion demonstrates that the issues presented in the Petition filed with the state court do not present any questions based on or arising under federal law, and that such issues otherwise fall under the probate exception to the exercise of both federal question and diversity jurisdiction.

Prior to removal, Petitioners had filed with the probate court a Motion for Temporary Restraining Order and Preliminary Injunction (Document 1-6). That Motion sought to restrain FINRA from terminating the membership interests of Alpine and Scottsdale until after a judicial determination by the probate court, or some other judicial court of general or appellate jurisdiction as to whether the Trusts were obligated to provide full and complete copies of the trust instruments as a condition for Alpine and Scottsdale continued membership interest in FINRA, (which is a legal requirement for anyone engaged in the securities business), or whether that obligation is satisfied under state law by providing Certificates of Trust. This Motion was not further pursued after removal because counsel for Petitioners was informed that co-counsel in New York, had obtained assurances that FINRA would not suspend Alpine or Scottsdale membership until the conclusion of a judicial determination of the issues.

Based on that assurance, counsel could not represent to this court, under FRCP 11 standards, that the threat of harm from suspension was immediate. Reliance on that assurance proved to be misplaced, however, as FINRA has now terminated the memberships without a judicial determination of the issues. Alpine and Scottsdale have appealed to the SEC, but the SEC is not a judicial body, and further, will adjudicate only issues whether the trust restructuring effected a change in ownership, but not whether FINRA's demand to inspect the trust instrument is satisfied under Nevada State law, by providing a copy of the Trust Certificate. See Declaration of William Peterson. That issue is presented only in the Petition filed in state court, that FINRA removed to this court. Only this court, or the Nevada State Court (if the matter is remanded) can or will determine that. Pending that determination and for the reasons set forth below, Petitioners are entitled to a temporary restraining order restoring their membership status until a preliminary injunction hearing can be held, and also provided, of course, that they satisfy their burden of proof,

- 7 -

that Petitioners are entitled to that preliminary injunction pending ultimate disposition of the issue, on the merits. Because Alpine and Scottsdale's businesses have been completely shut down indefinitely, the harm and damage suffered by FINRA's actions is irreparable, not only because it will be difficult to ascertain or measure the damage in economic terms, but also because in the absence of a Bivens claim, damages are not even available, and last because under the law of Nevada, and elsewhere, the loss of a business constitutes irreparable harm in and of itself.

**III. Burden of Proof**

This Court (and Judge) has adjudicated not less (and probably more) than 44 reported cases granting or denying temporary and or preliminary injunctive relief. The standards are not in dispute. Those standards were articulated by this court most recently in January of this year in *Nevada v. United States*, 364 F.Supp.3d 1146 (D. Nev. 2019), and *Westlake v. Miller*, 2019 WL 402310 (D. Nev. 2019). In the latter case, the court granted a Temporary Restraining Order, but denied (after hearing), the preliminary injunction. The requirements for obtaining a Temporary Restraining Order and Preliminary Injunction are the same. *Stuhlbarg Int'l Sales Co., v. John D. Brush & Co.*, 240 F.3d 832 (9th Cir. 2009); *Otter Products v. Anke Group Industrial Limited*, 2018 WL 5910882 (D. Nev. 2018). Those requirements are (1) likelihood of success on the merits, (2) likelihood of irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in the movants favor, and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council*, Inc., 555 U.S. 7, 20 (2008).

In the Ninth Circuit, serious questions going to the merits and a hardship balance that tips sharply toward the plaintiff can also support the issuance of an injunction, assuming the other two elements of the Winter test are also met. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011); *Anke Group*, supra. In *Westlake*, supra., this court held that relief ordering a party to take action (as opposed to refraining from taking action) is treated as a mandatory injunction. That test employs the same elements, but is subject to the additional accretion that the moving party should also show that the facts and law are clearly in his favor or extreme or very serious damage will result if the injunction does not issue. See also *Stanley v. Univ. S. Calif.*, 13 F.3d 1313, 1320 (9th Cir. 1994); *Park Vill. Apartment Tenants Ass'n v. Mortimer Howard Tr.*, 636 F.3d 1150,

- 8 -

1160 (9th Cir. 2011).

This court has observed, based on the case law, that "the overall purpose, indeed the sole purpose of injunctive relief "is to preserve the status quo ante litem pending a determination of the action on the merits." *Lyninger v. Motsinger*, 2010 WL 4258747 (D. Nev. 2010). In *National Labor Relations Board v. Prime Healthcare Services d/b/a Saint Mary's Regional Medical Center*, 2017 WL 2192970 (D. Nev. 2017) this court observed that irreparable harm is harm that is likely in the absence of injunctive relief. That test is established in circumstances where a decision or practice is allowed to reach fruition, thereby rendering subsequent remedial action meaningless or if such injury cannot be cured by later relief. In that case, the court declined to grant relief because it appeared that the court could not preserve or "restore" the status quo to prevent the harm from occurring. Interim relief is available if the status quo can be restored, as well as preserved. Id; *NLRB v. Tomco Carburetor Co.*, 853 F.2d 744, 747 (9th Cir. 1988). Injunctive relief is available if the status quo ante *can be restored*, even if the mechanism for doing so, is to demand or order action that effects such restoration. Id.

## IV. Likelihood of Success on the Merits

In the Ninth Circuit, this test can be satisfied under the sliding scale approach. That approach provides that injunctive relief may issue if there are "*serious questions going to the merits and the balance of hardships tips sharply in the plaintiff's favor.*" *Strict Scrutiny Media v. City of Reno*, 290 F.Supp.3d 1149 (D. Nev. 2017). The other two Winter elements must also be satisfied (likelihood of irreparable injury and pubic interest). Those requirements are satisfied because so far as the trusts can determine from the papers filed by FINRA in this proceeding:

- FINRA does not dispute that it is a private corporation registered to do business and doing business in Nevada with respect to its primary charge in overseeing the operations of private brokers engaged in the securities business in Nevada;

- FINRA does not dispute the existence and purpose of Nevada law in protecting the confidentiality of estate planning documents, including trusts as set forth in NRS 163.400;

- FINRA does not dispute the plain meaning of that statute which is that requests for

       trust instruments proving the existence, ownership interests and control and operation of trusts are fully satisfied by providing Certificates of Trust;

- FINRA does not dispute that it received such certificates;
- FINRA does not dispute that it has not asked for any additional information regarding any aspect or provision of such instrument not provided or in the Certificates; and
- FINRA does not dispute that it has not identified any need to know or understand the testamentary dispositive or other provisions of the Trusts that are not provided by the Certificates.

FINRA's sole defense or excuse for contesting the application of Nevada law to its request for the Trust Instruments, and for rejecting Trust Certificates in lieu of providing such instruments, is that it is not subject to Nevada law (even though it complies with Nevada law regarding its corporate registration for doing business here). FINRA's sole basis for objecting to the application of Nevada law is its long discredited proposition, advanced by it everywhere and almost always that "*FINRA takes the more general position that because it cannot have any duties outside those created by the Securities Exchange Act, this Court must have exclusive jurisdiction. But this begs the question: What duty does Mr. Lickless seek to enforce with the meaning of Section 78aa?*" *Lickless v. FINRA*, 2011 WL 9471022 (D. Cal. 2011) (holding FINRA subject to state law regarding the expungement of FINRA's disciplinary records regarding its members).

    In short, FINRA takes the position that it is a federal agency immune from state law. FINRA is not a federal agency. It is a private corporation organized and doing business under state law and subject to state law with respect to all matters save and except those limited functions that the courts have determined fall within its expressly delegated authority from Congress or the SEC. Because FINRA is a person under Nevada state law regarding the obligation to accept Certificates of Trust in lieu of trust instruments as proof of trust existence, ownership and operation, it is subject to that law. No SEC or FINRA rule provides otherwise.

    As set forth at length in the Petitioners Motion to Remand (Document 17 at pages 11-14; Reply to Opposition to Motion to Remand, (Document 26 at pages 1-5, and Opposition to Motion

- 10 -

1  to Dismiss (Document 16 pages 11-16), the Trusts petition sought no relief based on any alleged
2  violation of the Exchange Act, any violation of any FINRA rule, nor did the Trusts Petition seek to
3  enforce any FINRA rules, nor did it raise any federal issue in its state law claims of any substantial
4  nature. The Petition merely sought a determination and ruling that in demanding to see and review
5  Trust Instruments (required by no FINRA or SEC rule anywhere) FINRA is a person (as defined
6  by state law), subject to Nevada state law regarding its obligations to accept Trust Certificates as
7  proof of the existence, ownership and operation of Nevada Trusts. These points and authorities, if
8  not demonstrating a likelihood of success on the merits, at the very least demonstrate a "*serious*
9  *question going to the merits*." As set forth in the next section, that the balance of hardships tips
10 sharply in the Trusts favor, can scarcely be disputed.

**V. Balance of Hardships and Irreparable Harm**

The hardship inflicted on the Petitioners from the suspension of the member licenses for Alpine and Scottsdale is catastrophic. It is the civil equivalent of the death penalty, as after 50 years of uninterrupted business, they are now required to close their doors for failing to provide trust instruments that (1) they are not required to provide under state law, and (2) that does not present any danger of any harm to the public as they have been operating under the rubric of these trusts for over six years without objection, cavil, or incident relating to ownership. In fact the reverse is true, as innocent third parties are now precluded from liquidating their accounts, and Alpine and Scottsdale are precluded from performing other actions with respect to the securities held for them, and (3) as to which, all essential information has been provided in the form of Trust Certificates and no further information has been requested.

In Nevada, as elsewhere, "*the right to carry on a business without interruption is a property right, and acts committed without just cause or excuse which interferes with the carrying of that business or destroy its custom, credit or profits, do an irreparable injury and authorized the issuance of an injunction.*" *Guion v. Terrea Marketing of Nevada, Inc.*, 90 Nev. 237, 523 P.2d 847 (1990). The loss in this case is catastrophic, irretrievable, and irreparable. The loss to FINRA is nil. The consequence of an injunction in this case is salutary restoration of the status quo ante, which is continued operation of a previously uninterrupted business for a combined 50 years, and under

the same current management, and operations for the last 7 years, without incident.

**VI. Public Interest**

In the Ninth Circuit and elsewhere, the impact on the public, or third parties in granting or denying injunctive relief is considered. "*When the reach of an injunction is narrow, limited only to the parties, and has no impact on non parties, the public interest is a neutral factor in the analysis rather than one favoring granting or denying an injunction. If the impact of an injunction reaches beyond the parties carrying with the potential of public consequences, the public interest will be relevant to whether the district court grants an injunction.*" Stormans, Inc. v. Seleckyu, 586 F.3d 1109, 1138, 1139 (9th Cir. 2003).

The impact of FINRA's suspension of Alpine and Scottsdale affects large numbers of persons in an extremely damaging way. This is because Alpine and Scottsdale are prohibited from effecting transactions relating to their accounts, including liquidating those accounts or making other transactions in those accounts. This impact not only negatively impacts those third parties, but it also may also render entirely moot Nevada's ability to implement its public policy in maintaining the confidences of those who domicile their trusts in Nevada, and expect to be able to preserve those confidences, including attorney client confidences from the public. There is no countervailing interest favoring suspension without a judicial determination of Petitioners rights, and the rights of those third parties, including the state of Nevada which would also be vindicated by such determination.

**VII. Bond**

As FINRA is not exposed to any monetary harm whatsoever as a consequence of the issuance of an injunction restoring the status quo ante permitting Alpine and Scottsdale to continue in business pending judicial resolution of the merits of this dispute, and third parties will only be benefited by the granting of an injunction (and severely harmed if one is not granted), any bond should be purely nominal.

**VIII. Conclusion**

Petitioners are entitled to a temporary restraining order restoring the status quo ante of the membership interests of Alpine and Scottdale in FINRA, pending a judicial determination of the

1  parties respective rights and obligations to provide Certificates of Trust to FINRA disclosing
2  ownership, operation and control of the six trusts, that have indirect ownership interests in them, in
3  lieu of complete trust instruments, as is specifically provided for under Nevada law for purposes of
4  implementing Nevada's public policy in maintaining the confidentiality of testamentary
5  instruments prior to death (including intervivos trusts that contain dispositive provisions on death),
6  and in maintaining confidences protected under various privileges afforded under Nevada law,
7  including the attorney client privilege. Petitioners, have demonstrated (1) a likelihood of success
8  on their contention that FINRA is subject to Nevada law with respect to this issue, or at the very
9  least that they have raised serious questions as to the merits on this issue, and that the balance of
10 hardships strongly tilts in their favor, (2) that they will suffer irreparable harm in the form of
11 catastrophic loss and destruction of their entire business if an injunction does not issue, (3) that the
12 balance of hardships tilts in their favor, as FINRA will sustain no harm whatsoever from an
13 injunction pending a judicial determination of the respective rights of the parties, and, last, (4) that
14 the public interest strongly weighs in favor of an injunction.

Dated: August 19, 2019

SNELL & WILMER L.L.P.

By: _____
William E. Peterson, No. 1528
Janine C. Prupas, No. 9156
50 West Liberty Street, Suite 510
Reno, Nevada  89501

*Attorneys for Petitioners*

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, I electronically filed the foregoing **MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** with the Clerk of Court for the U.S. District Court, District of Nevada by using the Court's CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

DATED: August 19, 2019

By */s/ Maricris Williams*
An employee of Snell & Wilmer L.L.P.

**INDEX OF EXHIBITS**

| Exhibit No. | Description | No. of Pages |
|---|---|---|
| A | Declaration of William Peterson | 18 |
| B | Declaration of John Hurry | 3 |

4824-5994-7425

Snell & Wilmer
L.L.P.
LAW OFFICES
50 West Liberty Street, Suite 510
Reno, Nevada 89501
775-785-5440