UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| PEE PEE POP TRUST, *et al.*, | Case No. 3:19-cv-00240-MMD-CBC |
| Petitioners, | ORDER |
| v. | |
| FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC., | |
| Respondent. | |

## I. SUMMARY

This dispute centers on whether a Nevada state law means that Petitioners are not required to turn over trust documents requested by Respondent the Financial Industry Regulatory Authority, Inc. ("FINRA") pursuant to its rules. But this order specifically addresses several threshold issues without reaching the merits of the dispute. John Hurry, as trustee of Petitioners Pee Pee Pop Trust, Pee Pee Pop Trust II, Pee Pee Pop Trust III, Man Cub Trust, Man Cub Trust II, and Man Cub Trust III dated July 22, 2013 (collectively, the "Trusts") filed a petition in Nevada state probate court seeking declaratory and injunctive relief against FINRA. (ECF No. 1-1 (the "Complaint").) FINRA removed the Complaint to this Court. (ECF No. 1.) Before the Court is FINRA's motion to dismiss (ECF No. 11), and the Trusts' competing motion to remand to the state probate court (ECF No. 17).[1] As further explained below, the Court will deny the Trusts' motion to remand and grant FINRA's motion to dismiss because the Court finds this case arises under Section 27(a) of the Exchange Act, 15 U.S.C. § 78aa(a) ("Section 27(a)"), and FINRA is immune from suit under these circumstances.

---

[1]The Court has reviewed the parties' corresponding responses and replies. (ECF Nos. 16, 21, 22, 26.)

## II. BACKGROUND

John Hurry and his wife Justine Hurry (the "Hurrys") are the trustees of the Trusts. (ECF No. 1-1 at 3.) The Trusts own SCA Clearing LLC and Scottsdale Capital Advisors Holdings, LLC. (*Id.* at 1.) These entities, in turn, own Alpine Securities Corporation and Scottsdale Capital Advisors Corporation (collectively, the "Corporations"). (*Id.*) The Corporations are licensed and registered members of FINRA. (*Id.* at 4.)

FINRA is threatening to—and temporarily did (ECF Nos. 32, 33, 34, 35)—suspend the Corporations' FINRA memberships because the Trusts have refused to turn over "complete and detailed information regarding the terms and conditions of the Trusts, and the trust instruments" to FINRA. (ECF No. 1-1 at 7.) Such suspension would harm the Trusts because it would make the Corporations unable to do business. (*Id.*) The Corporations must be members of FINRA in order to sell securities. (*Id.* at 4.)

This dispute started when the Hurrys decided to divide one trust they controlled into the Trusts. (*Id.* at 3.) FINRA contacted the Corporations about this transaction. (*Id.* at 4.) The Corporations essentially responded that their ownership had not materially changed, and also provided FINRA with Certificates of Trust In Lieu of Trust Instruments (the "Certificates"), as allegedly permitted under NRS § 164.400, *et seq.*, to provide FINRA with information about the Trusts. (*Id.* at 3-4.) FINRA deemed the Certificates inadequate, and demanded to see "all provisions of the Trusts, and be provided with copies of all the trust instruments," which the Trusts and Corporations contend is "in direct contravention of Nevada law." (*Id.* at 5.) Thus, FINRA insists on full disclosure of information about and the documents governing the Trusts upon threat of suspension of the Corporations' FINRA memberships, which the Trusts contend violates Nevada law. (*Id.*)

The Trusts characterize FINRA's actions as "not required, demanded or even permitted under its own operating rules and procedures," arguing that the disclosures FINRA seeks undermine Nevada's public policy of protecting trust confidentiality and violate the terms of the Trusts themselves, which allegedly preclude such disclosure without a court order. (*Id.* at 5-6.) The Trusts assert that the Nevada state probate court

2

has jurisdiction over this controversy under NRS § 164.010, and seek an order from that court that: (1) the Trusts and Corporations are not obligated to provide FINRA with the information it seeks, both generally and until the court adjudicates their claim; and (2) "an order enjoining and restraining FINRA from terminating or suspending Petitioners [sic] membership in FINRA until such time as the court has determined the rights and obligations of the Parties." (*Id.* at 6-8.)

FINRA removed the case to this Court, contending the Court has federal question jurisdiction under Section 27(a), and this Court may exercise supplemental jurisdiction over the declaratory judgment claim to the extent it is based on state law. (ECF No. 1 at 4.) FINRA alternatively contends this Court has diversity jurisdiction over the case. (*Id.* at 4-5.) As mentioned, FINRA then moved to dismiss, and the Trusts moved to remand.

### III. DISCUSSION

The Court will address FINRA's motion to dismiss and the Trusts' motion to remand together because the parties' arguments in both motions largely overlap. Generally speaking, the parties agree this case should not proceed before this Court, but disagree as to whether it should be dismissed or remanded. As further explained below, the Court is persuaded by FINRA's argument this case should be dismissed. (ECF No. 22.) The Court first addresses below its jurisdiction over this case, and then addresses FINRA's immunity from suit under these circumstances.

#### A. Jurisdiction

Section 27(a) "provides federal district courts with exclusive jurisdiction 'of all suits in equity and actions at law brought to enforce any liability or duty created by [the Exchange Act] or the rules and regulations thereunder.'" *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 136 S. Ct. 1562, 1568 (2016) (citing 15 U.S.C. § 78aa(a)). It thus confers "exclusive federal jurisdiction of the same suits as 'aris[e] under' the Exchange Act pursuant to the general federal question statute." *Id.* at 1567 (citation omitted). That means: (1) "federal jurisdiction attaches when federal law creates the cause of action asserted[,]" or (2) "a federal court has jurisdiction of a state-law claim if it 'necessarily

raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance' of federal and state power." *Id.* at 1569-70.

As further explained below, the Court finds that the Trusts' Complaint falls into the second category. Although it invokes state law as the basis for relief, the Complaint "is on its face a challenge to FINRA's application of its internal rules in exercising its regulatory authority under the Exchange Act." *Turbeville v. Fin. Indus. Regulatory Auth.*, 874 F.3d 1268, 1274 (11th Cir. 2017); *see also id.* at 1273 (affirming the district court's denial of the plaintiff's motion to remand to state court, along with its decision to grant FINRA's motion to dismiss, holding that "suits against SROs like FINRA for violating their internal rules 'arise under' the Exchange Act of 1934 and therefore fall under the Act's grant of exclusive jurisdiction to the federal district courts[,]" and also holding that "no private right of action exists for SRO members and associated persons to sue SROs for violating their own internal rules."). This Court therefore has jurisdiction over the Complaint.

The Complaint explains that FINRA insisted on more fulsome trust documentation than the Trusts and the Corporations are willing to disclose, but does not fully explain why FINRA seeks that information. (ECF No. 1-1 at 3-5.) FINRA's briefing provides the missing explanation: FINRA's rules. (ECF No. 22 at 3-5.) Specifically, FINRA Rule 1017(a) requires its members to file Continuing Membership Applications ("CMAs") so that FINRA can approve changes to its members' ownership, control, or business operations. (*Id.* at 4.) FINRA Rule 1017(e) allows FINRA to request from a member filing a CMA "any additional information or documents necessary to render a decision on the application." (*Id.*) FINRA Rule 9552(a) allows FINRA to suspend a member who refuses to provide requested documents or keep its CMA current. (*Id.*) Here, FINRA insisted on more fulsome documentation from the Trusts under FINRA Rule 1017(e), but the Trusts refused to provide it, relying on Nevada law. (*Id.*; *see also* ECF No. 1-1.) So FINRA issued notices of suspension to the Corporations. (ECF No. 22 at 4.) The Corporations then requested a hearing to dispute their suspension from FINRA (*id.*), and then appealed following an

adverse ruling at that hearing—but the Corporations' suspension is currently stayed by the Securities and Exchange Commission ("SEC") pending its review of the decision of the FINRA Hearing Panel (ECF No. 35 at 2). Meanwhile, the Trusts filed this case in Nevada state court. (ECF No. 22 at 4-5.) This procedural history shows this case is really about "FINRA's application of its internal rules in exercising its regulatory authority under the Exchange Act[,]" *Turbeville*, 874 F.3d at 1274.

The conclusion this case is really about FINRA's application of its internal rules is further buttressed by the allegations included throughout, and the relief sought in, the Complaint. First, the Complaint alleges that FINRA violated its own rules in taking the actions described *supra* against the Corporations. (ECF No. 1-1 at 5.) Second, the Complaint contends that FINRA does not have the right to suspend the Corporations or request additional documentation about the Trusts, revealing the Trusts' animating theory of its case that FINRA lacks the power to enforce its own rules as it has enforced them against the Corporations. (*Id.* at 7.) Third, the Complaint specifically requests an order that the Trusts are not required to provide FINRA with the information it seeks, along with an injunction preventing FINRA from suspending the Corporations until the state probate court reaches a decision. (*Id.* at 7-8.)

The Trusts thus seek to challenge FINRA's application of its own rules in filing this action—raising a substantial federal issue. *See Manning*, 136 S. Ct. at 1570 (providing the second, alternative prong for the test as to federal court jurisdiction under Section 27(a)). This Court therefore has jurisdiction over this case. *See Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 159 F.3d 1209, 1212 (9th Cir. 1998), *abrogated on other grounds by Manning*, 136 S. Ct. 1562 (finding the district court had jurisdiction over the case under Section 27(a) even where the plaintiff's "theories are posited as state law claims, [because] they are founded on the defendants' conduct in suspending trading and de-listing the offering, the propriety of which must be exclusively determined by federal law."); *see also Sacks v. Dietrich*, 663 F.3d 1065, 1068 (9th Cir. 2011) (finding the district court correctly held it had jurisdiction over the case where "the alleged wrongful conduct

5

that underlies [the plaintiff's entirely state-law claims] turns on a federal question: whether the arbitrators exceeded their jurisdiction under the FINRA arbitration rules by applying Rule 13208 and barring Sacks from representing his client.").

In addition, the Court finds distinguishable the four non-binding, unreported decisions from courts in other districts the Trusts rely on in opposing FINRA's argument as to why this Court has jurisdiction over this case. (ECF No. 26 at 2.) All four of those cases dealt with an expungement procedure not at issue here, and the courts in all four of those cases found federal jurisdiction lacking primarily because the Exchange Act imposed no duty on FINRA to expunge information. *See Godfrey v. Fin. Indus. Regulatory Auth., Inc.*, Case No. CV162776PSGPJWX, 2016 WL 4224956, at *2-*5 (C.D. Cal. Aug. 9, 2016) (discussing the three other cases the Trusts rely on in reaching a similar result to those cases for the same primary reasons). Here, FINRA's duties are not at issue—the Trusts' duties to FINRA regarding FINRA's interpretation of its own rules are—and the Trusts allege FINRA broke those rules. (ECF No. 1-1 at 5, 7-8.) The Court also finds distinguishable *Dennis v. Hart*, 724 F.3d 1249 (9th Cir. 2013), because there, unlike here where the Trusts allege FINRA violated its own rules (ECF No. 1-1 at 5), "the plaintiffs admit[ted] that PICO complied with the Exchange Act and allege only violations of state laws" (*see id.* at 1253). (ECF No. 17 at 2.)

In sum, the Court has jurisdiction over this action and will next address FINRA's motion to dismiss.

**B.    Immunity**

Having found it has jurisdiction over this case, the Court also finds the Trusts cannot state a claim against FINRA because it is immune from suit under these circumstances— because the Exchange Act lacks a private right of action, or alternatively because FINRA is entitled to regulatory immunity. The Court will therefore dismiss this case with prejudice, as amendment would be futile, and decline to address the parties' remaining arguments.

As discussed *supra*, the Complaint is animated by the allegation that FINRA violated its own rules in rejecting the Certificates and insisting on further documentation

regarding the Trusts. (ECF No. 1-1 at 5 ("FINRA's actions are not required, demanded or even permitted under its own operating rules and procedures").) This case is therefore barred because the Exchange Act does not provide for a private right of action. *See Jablon v. Dean Witter & Co.*, 614 F.2d 677, 681 (9th Cir. 1980) (finding no private right of action for violations of stock association rules); *see also Sparta*, 159 F.3d at 1213 ("a party has no private right of action against an exchange for violating its own rules or for actions taken to perform its self-regulatory duties under the" Exchange Act); *Turbeville*, 874 F.3d at 1276-77. This case cannot proceed against FINRA under these factual circumstances and given the allegations in the Complaint.

Regardless, FINRA is otherwise entitled to regulatory immunity here because the allegations and relief sought in the Complaint focus on FINRA's application of his own rules in an ongoing enforcement proceeding, and the Trusts' key contention that FINRA is violating its own rules. (ECF No. 1-1 at 5.) *See Hurry v. Fin. Indus. Regulatory Auth., Inc.*, Case No. 18-15748, --- Fed. App'x ---, 2019 WL 3408894, at *1 (9th Cir. July 29, 2019) ("The district court correctly held that regulatory immunity bars many of Plaintiffs' claims, including those claims alleging that Defendants exceeded the scope of their regulatory and investigatory authority."). In *Hurry*, the Ninth Circuit recently affirmed the District of Arizona's dismissal of some of the Hurrys' claims against FINRA alleging that FINRA exceeded the scope of its regulatory and investigatory authority when it raided the office of one of the Corporations under the doctrine of regulatory immunity. *See id.* Thus, allowing this case to proceed would also be inconsistent with *Hurry*.

The Court will therefore dismiss this case.

**IV.    CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motions before the Court.

It is therefore ordered that FINRA's motion to dismiss (ECF No. 11) is granted.

7

It is further ordered that the Trusts' motion to remand (ECF No. 17) is denied.

It is further ordered that this case is dismissed with prejudice because amendment would be futile.

The Clerk of Court is directed to enter judgment accordingly and close this case.

DATED THIS 26th day of September 2019.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE